IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PCL CONSTRUCTION SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-144C |
| | ) | (Judge Horn) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, the United States, respectfully requests the Court to enter judgment in its favor pursuant to Rule 56 of the Court's Rules ("RCFC") because plaintiff's ("PCL's") claims are barred by res judicata -- also called claim preclusion. In support of our motion, we rely upon following brief and our proposed findings of uncontroverted fact, filed herewith.

STATEMENT OF THE ISSUES

1. Whether the doctrine of res judicata bars the claims presented by PCL in this case because PCL's complaint seeks relief arising from the same transactional facts that were fully and finally resolved in PCL's previous case against the Government, which resulted in an affirmed final judgment upon the merits.

2. Whether the Court's or Government counsel's colloquial statements regarding hypothetical-future claims by PCL served to reserve for PCL the ability to submit a split-claim, in the absence of any express reservation by PCL itself and in the

absence of an acceptance of any such reservation by the Court.

STATEMENT OF FACTS

In the mid-1990s, plaintiff PCL Construction Services, Inc., ("PCL") partially performed a construction contract[1] for the United States Bureau of Reclamation ("Reclamation") whereby PCL constructed the Hoover Dam visitor center and parking structure. PCL Construction Services, Inc. v. United States, 47 Fed. Cl. 745, 753-82 (2000)(hereinafter "PCL"). After its partial performance, PCL claimed that it believed that Reclamation imposed excessive contract changes upon PCL (PCL First Amended Complaint in case no. 95-666C ("breach complaint") ¶¶ 144, 154-155; PCL Complaint in case no. 06-144C ("delay complaint") ¶¶ 71), that the contract plans and specifications were "defective" (breach complaint ¶¶ 8, 117, 121, 122, 124, 132-136, 139-140, 143, 147-148, 212, 218, 288; delay complaint ¶¶ 43-44, 46, 48, 52) which disrupted and delayed PCL's contract performance (breach complaint ¶¶ 132-134, 290, 292-296; delay complaint ¶¶ 51-52, 57-58, 68), and that Reclamation otherwise "maladministered" PCL's contract. Breach complaint ¶¶ 149-164, 170, 173, 288-296; delay complaint ¶¶ 48-58, 67-68, 71, 79-80. PCL depicted the alleged "perturbation" it experienced with

[1] Near the conclusion of the project, PCL refused to perform further and was duly terminated for default. PCL's challenge to the default termination was rejected by this Court, and PCL did not appeal that aspect of the Court's decision. PCL at 811.

RFI’s, “CRXs” (instances where PCL believed it was entitled to extra compensation for contract changes), and other contemporaneous written correspondence but, notably, did not provide a single complete contractually-required time-impact evaluation for any of its alleged construction difficulties. PCL at 745, 759, 761-764, 766, 768, 771, 773-774, 779, 812; breach complaint ¶¶ 144, 150-153; delay complaint ¶¶ 46, 58, 60-68, 72-80. Some of the individual aspects of the project of which PCL complained were delays to the excavation of the back slope at the rear of the parking structure (“back slope”)(breach complaint ¶ 128; delay complaint ¶¶ 33-37), problems and delays constructing the ring beam in the visitor center (“ring beam”)(breach complaint ¶ 128; delay complaint ¶¶ 33-37), and extra costs and delays caused by the installation of a drag tie in the foundation of the parking structure (“drag tie”) (breach complaint ¶ 128), among others (delay complaint ¶¶ 33-37). PCL also periodically presented change order proposals in an attempt to negotiate payments for its individual CRXs. Delay complaint ¶¶ 72-29.

In 1994, with construction progressing towards substantial completion, PCL presented (but did not certify) a request for equitable adjustment (“REA”) that sought approximately $23 million, based upon the entirety of PCL’s construction delays and cost-overruns through July of 1993 – virtually all of which were blamed upon Reclamation. PCL at 803; breach complaint ¶¶ 166-171; delay complaint ¶¶ 14, 86-90. PCL’s REA purported to

analyze the delays and disruptions caused by Reclamation and assigned most, but not all, of the responsibility for PCL's delayed performance and cost overruns to Reclamation. PCL at 780, 803. PCL's perturbations at the back slope, ring beam, drag tie, and as a result of PCL's CRXs were featured prominently in PCL's REA. Delay complaint ¶ 88.

Reclamation found no Government liability under PCL's REA based, in part, upon PCL's failure to provide valid contractually-required time-impact evaluations for its claimed delays and disruptions, but Reclamation indicated a willingness to consider further analysis by PCL in which Reclamation even volunteered to participate. PCL at 780; delay complaint ¶ 89.

Instead of certifying or further refining its REA, however, PCL chose to abandon the REA and instead submitted a certified claim based upon the exact same transactional facts as its REA (including the back slope, ring beam, drag tie, and contract changes). Breach complaint ¶¶ 128, 166-169; delay complaint ¶¶ 33-37, 86-90. Without any indication that PCL wished to "split" its REA into two or more claims and to move forward with one claim while reserving another, PCL's certified claim simply characterized the same transactional factual events depicted in its REA as a "breach of contract," "fraud in the inducement," "hindrance", "cardinal change," and/or "defective specifications." Breach complaint.

When Reclamation denied PCL's certified claim, PCL appealed the denial to this Court by filing the breach complaint that mirrored both the REA and certified claim. The breach complaint was based upon the same transactional facts as both and specifically relied, again, upon perturbations at the back slope, ring beam, and drag tie, as well as unresolved CRXs and all of the same transactional facts set forth in the REA and certified claim. Breach complaint ¶¶ 5-6, 128, 165-169. Again, PCL's breach complaint contained no indication whatsoever that PCL wished, or expressly reserved the right, to split its multiple legal theories away from other separate, un-litigated, claims based upon the same transactional facts. PCL's breach complaint simply repackaged the same transactional facts (delays and cost overruns allegedly caused by Reclamation's contract and maladministration thereof) into a series of legal theories based upon breach of contract, misrepresentation, superior knowledge, breach of implied warranty, cardinal change, and hindrance of performance.[2] Breach complaint. Notably, PCL's breach complaint did not assert that PCL's delays and disruptions entitled PCL to relief under the changes clause (or any other clause) of the contract. Breach complaint, Prayer for Relief. Although for

[2] PCL presented the same legal theories in its complaint as in its certified claim except it added counts for "illegally funded contract," and "illegal contract based upon violation of FAR Part 16". Breach complaint p 10.

ease of reference, PCL, the Court, and Government counsel periodically referred to PCL's case as a "breach of contract" or "total breach" claim,[3] PCL actually litigated no fewer than six distinct legal theories – none of which are identical to each other. For example, PCL's "fraud in the inducement" theory suggested that the original contract solicitation was so "severely defective" that PCL was duped into signing the contract. Breach complaint ¶¶ 210-233. PCL's "cardinal change" theory, on the other hand, was based entirely upon events that occurred during performance -- that contract changes and the need for numerous RFIs and CRXs constituted a fundamental change to the nature and the scope of the contract. Breach complaint ¶¶ 298-303. In fact, the only identical aspect of PCL's different legal theories was a demand for total cost damages of $31,040,071. Breach complaint, Prayer for Relief. Thus the "total" or "global" nature of PCL's breach claims more accurately describes the amount of damages sought by PCL, and the method of its calculation, rather than a single "global" construction event or time period covered by PCL's breach claim and complaint. PCL at 800.

The litigation of PCL's case was lengthy and expensive. PCL at 782. It included a summary judgment proceeding whereby PCL's

---

[3] PCL now refers to its previous claim/complaint/case as a "global breach." Delay complaint ¶¶ 102.

"illegal funding" claims were eliminated (PCL Construction Services. Inc. v. United States, 41 Fed. Cl. 242 (1998); delay complaint ¶ 19), two rounds of discovery which included depositions of approximately 40 fact witnesses (some deposed twice), analysis of PCL's case by six expert witnesses (four of whom were retained by PCL), separate claims by PCL challenging its termination for default and seeking return of liquidated damages and funds retained by Reclamation, a trial that occupied 51 days in Court over a period of 17 months (Tr. 12780), an unsuccessful multi-episode attempt to mediate a resolution to the case (which included yet another analysis of the project by an expert witness for PCL) (PCL at 782), and a Government counterclaim for defective components of the theater turntable feature of the visitor center that was defectively designed and constructed by PCL.[4] Although litigation of PCL's case provided PCL with the opportunity for a full and complete adjudication of the transactional factual events depicted in PCL's REA, certified claim, and breach complaint,[5] PCL never attempted to (retroactively) split or expressly reserve any additional claims arising out of the same transactional facts. In fact, just the

---

[4] The Government's counterclaim was settled without the need for litigation beyond the Government's counterclaim complaint.

[5] At trial, PCL examined many aspects of the project in a very detailed fashion and its trial presentation was not limited in any meaningful way. In fact, the Government's case occupied less than 14 of the 51 days of trial.

opposite. PCL and its experts rejected the suggestion that a traditional contract-based delay/disruption/changes claim was more appropriate than PCL's many "breach" theories when they testified that a traditional schedule/delay analysis of the project was "impossible." See, e.g., Bennett Tr. 61-62, 698-700; Eudy Tr. 6351; Fenster Tr. 6477-78; Mizell Tr. 6540,[6] 6719-6721; Kellogg Tr. 7900, 7903-4, 7943-7945, 8062, 8176;[7] Schwartzkopf Tr. 12008.[8] PCL's president testified that PCL's own summary level schedule delay analysis was "wrong." Bennett Tr. 710; PCL

---

[6] Mr. Mizell testified:

"It was our position -- and we had solicited advice from experts in the field of scheduling during the process of the preparation of the REA -- that the contract specification regarding the requirement to do time impact analyses did not anticipate a project with the vast amount of substantial changes that we had been faced with on this Hoover project, and that you really could not perform to that specification. I can elaborate if you want me to. But we had determined, again through discussions with people very knowledgeable, plus our own knowledge, that it was just not feasible to do it."

[7] Mr. Kellogg testified:

"If you're trying to say that you could do an impact -- time-impact analysis for the project, our opinion is that you really can't meaningfully do that."

[8] Mr. Schwartzkopf testified:

"Q. Well, I mean, one of the theses of your report here is that, because of all the permutations, it's essentially impossible to do a contractually compliant time-impact evaluation for the entire job, right?

A. That's correct."

at 802. Throughout the litigation, the Government urged PCL to abandon its breach theories in favor of a contract-based claim.[9] See, e.g., Tr. 64-65 (opening statements). PCL expressly refused to do so, even when cautioned by the Court as follows:

> The Court: Are you saying that your client is absolutely adamant that they will not present a certified claim at this point?
>
> Mr. Fenster: Yes, Your Honor.
>
> The Court: So be it. I think that's foolish, but so be it.

Tr. 13042

The trial-level litigation of the perturbations to the project concluded with this Court's 67-page decision that rejected all of the claims presented in PCL's breach complaint that arose from the transactional facts upon which PCL's REA and certified claim were based. PCL at 812. PCL's appeal of this Court's trial decision was rejected, after full briefing and argument, in an unpublished decision of the United States Court of Appeals for the Federal Circuit. Delay complaint ¶ 23.

At no time during PCL's partial performance of the contract, the presentation of PCL's REA, the submission of PCL's certified claim, or the trial and appellate litigation of PCL's case, did

---

[9] Urging PCL to drop its breach claim in favor of a contract-based claim is very different from consenting or acquiescing to PCL splitting its claims into separately-litigated cases.

PCL seek, or expressly attempt to reserve the right, to split its certified claim into separately submitted or litigated claims arising out of the same transactional facts.

In 2005, after retaining new counsel, PCL submitted two new certified claims to Reclamation that arise out of the same transactional facts (the alleged perturbation of PCL's partial contract performance) that were fully and finally resolved upon the merits in PCL's prior litigation – including the back slope, ring beam, drag tie and unresolved CRXs. Delay complaint ¶¶ 6, 8 After denial of PCL's new delay/disruption/CRX claims by Reclamation upon the basis of res judicata, (delay complaint ¶¶ 7, 9) PCL filed the its delay complaint that seeks to re-litigate the same transactional facts – that were fully and finally resolved upon the merits in PCL's prior litigation. Delay complaint.

PCL's delay complaint asserts five grounds for recovery that rely upon the same transactional facts as PCL's breach complaint. They are: A type I differing site condition claim, a type II differing site condition claim, a changes clause claim, a "constructive changes" claim, and a suspension of work claim. Delay complaint ¶¶ 119-176. Although each of PCL's "new" causes of action are unavailing for factual and legal reasons (consistent with this Court's affirmed trial decision), they are also undoubtedly repetitive of PCL's breach complaint. PCL appears to have energetically tried to avoid similarity between

PCL's breach complaint and its delay complaint but that task is impossible given the identical transactional facts that are the genesis of both complaints.

ARGUMENT

I. Summary Judgment For Defendant Is Proper In This Case

Summary judgment is properly granted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; United States Court of Federal Claims Rule 56. The moving party bears the burden of establishing the absence of any genuine issue of material fact, and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). However, the party opposing summary judgment must show an evidentiary conflict on the record; mere denials or conclusory statements are not sufficient. Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd., 731 F.2d 831, 836 (Fed. Cir. 1984). Here, PCL cannot recover because the undisputed facts are that PCL is attempting to re-litigate claims where the transactional facts have already been litigated to final judgment and no express reservation of rights was ever made by PCL or accepted by the Court.

II. PCL's Complaint Is Repetitive And Wholly Barred

The defense of res judicata, also called claim preclusion, alleges a failure to state a claim upon which the Court could

grant relief. See, e.g., Anderson v. United States, 46 Fed. Cl. 725 (2000). Although res judicata is sometimes raised in a motion to dismiss in lieu of an answer to the complaint, this motion requires the Court to examine evidence that falls outside PCL's delay complaint. Res judicata applies "not only as to every matter which was offered and received to sustain or defeat [a plaintiff's previous] claim or demand, but as to any other admissible matter which might have been offered for that purpose." Cromwell v. County of Sac, 94 U.S. 351, 352 (1877).

Res judicata bars re-litigation of a claim if the same parties have previously litigated that claim to a valid final judgment. Florida Power & Light Co. v. United States, 41 Fed. Cl. 477, 483 (1998); see Blonder-Tongue Lab., Inc. v. University of Ill. Found., 402 U.S. 313, 323-24 (1971). Repetitive litigation concerning the same facts is barred not only as to all litigated theories, but as to all "causes of action which were not but should have been raised in the prior litigation." Brown v. United States, 3 Cl. Ct. 31, 41 (1983), aff'd, 741 F.2d 1374 (Fed. Cir. 1984). The United States Court of Appeals for the Federal Circuit has adopted the "transactional approach" to res judicata. Foster v. Hallco Mfg. Co., Inc., 947 F.2d 469, 478-79 (Fed. Cir. 1991). "In this connection, 'claim' does not mean merely 'argument' or 'assertion.' 'Claim' is used in the sense of the facts giving rise to the suit." Id. at 478.

In Paalan v. United States, 57 Fed. Cl. 15, 17 (2003), the Court articulated the test for claim preclusion:

> [t]he doctrine of res judicata, also known as claim preclusion, predicates that "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 5, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979). Under this doctrine "a second suit will be barred by claim preclusion if (1) there is identity of parties (or their privies); (2) there has been an earlier final judgment on the merits of a claim; and (3) the second claim is based on the same set of transactional facts as the first." Jet, Inc. v. Sewage Aeration Sys., 223 F.3d 1360, 1362 (Fed. Cir. 2000).

Here, all three elements of the test enumerated in Paalan are clearly satisfied. In RCS Enterprises v. United States, the Court explained the circumstances under which two claims should be deemed to arise from the same set of transactional facts:

> [T]he Federal Circuit has adopted a "transactional" analysis for determining if the two claims are the same. Foster v. Hallco Mfg. Co., 947 F.2d 469, 478-79 (Fed. Cir.1991) (citing Restatement (Second) of Judgments § 24). According to the Restatement, claim preclusion extinguishes "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24(1).

53 Fed. Cl. 303, 307 (2002).

Although PCL has offered still more legal theories to describe its claims in its delay complaint, it cannot seriously

be disputed that the "new" claims arise out of the same transaction or series of connected transactions – PCL's construction of the Hoover Dam visitor center and parking structure and, more specifically (if necessary for a res judicata analysis), the alleged perturbations and extra costs encountered by PCL during the project. The law, therefore, denies PCL a second bite at the apple. At great expense to the Court and to the Government, both in terms of time and cost, PCL has already applied a multitude of legal theories to its claim for perturbations (a word that PCL oft-used to describe delay and disruption), and excess costs arising out of PCL's construction of the Hoover Dam visitor center and parking structure. Having affirmatively chosen not to include discrete claims for "delay and disruption" or "unresolved CRXs" in its breach claim and complaint, PCL cannot now return to this Court and re-litigate those claims.[10]

---

[10] Although res judicata is the applicable gournds for disposal of this case, in the alternative, the doctrine of issue preclusion, also known as collateral estoppel, bars any relief. See Utah Constr., 384 U.S. at 419. Issue preclusion holds that "an issue that is fully and fairly litigated, is determined by a final judgment, and is essential to that judgment, is conclusive in a subsequent action between the same parties." Bingaman v. Department of Treasury, 127 F.3d 1431, 1436-37 (Fed. Cir. 1997). Issue preclusion serves "the dual purpose of protecting litigants from the burden of re-litigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 (1979). The Contract Disputes Act itself, moreover, reinforces issue preclusion by providing that factual determinations by the boards of contract appeals are

## III. PCL's Purported Reservations Of Rights Do Not Permit PCL To Re-litigate Its Claims Because The Same Transactional Facts Have Already Been Litigated To Final Judgment

PCL's delay complaint asserts simply that "PCL expressly reserved the right to bring any claims for delays, disruptions, and impacts to its performance of the Contract." Delay complaint ¶¶ 128, 144, 165.[11] Apparently aware that a second complaint would elicit a dispositive motion of this type, PCL's delay complaint also contains a section entitled "preservation of claims" that relies only upon contract modifications and correspondence from the construction period that predate PCL's breach complaint. Delay complaint ¶¶ 81-85. Examples of the correspondence and modifications upon which PCL's "preservation" rests are attached to PCL's delay complaint. PCL correctly notes that these documents reserved for PCL the right to seek recovery of costs incurred as a result of delays but fails to account for the fact that these "reservations" occurred before PCL did, in fact, seek recovery of its total costs in its breach claim and

---

conclusive unless disturbed upon judicial review. 41 U.S.C. § 609(b); cf. Utah Constr., 384 U.S. at 419 (discussing similar provision of Wunderlich Act). Thus, issue preclusion equally bars PCL's delay complaint, the parties having already litigated PCL's allegations of Government responsibility for PCL's claimed financial loses on the Hoover Dam project.

[11] Interestingly, PCL does not assert that it expressly reserved the right to present its "changes clause" or its "constructive changes" counts. Delay complaint ¶¶ 151-160, 171-176. At the very least, then, those counts should be removed from PCL's delay complaint.

breach complaint, which were fully litigated to final judgment. Of course, PCL vigorously argued at the breach trial that the reservations of rights preserved PCL's ability to submit its breach claim/s. In fact, pages 220-222 of PCL's post-breach-trial brief (arguing that the release/reservation language did not bar PCL's breach claim) is almost word-for-word with paragraphs 81-85 of PCL's delay complaint, suggesting that the very same reservations preserved PCL's delay claims as well.

Needless to say, even if the documents relied upon by PCL at the breach trial effectively reserved PCL's ability to pursue its breach claim,[12] they certainly did not "preserve" the right for PCL to present two split claims arising from the same transactional facts, as PCL suggests in its delay complaint. The result is that PCL's delay complaint actually proves our point – PCL's "express reservations" did preserve the right for PCL to advance a claim and PCL's breach claim was the single path that PCL took to recover its costs. However packaged, whether as reservations in contract modifications, or correspondence to the

[12] We argued in the breach trial that PCL's pre-claim reservations did not reserve a breach-type claim because they permitted only claims supported by a CPM analysis. Govt. post trial brief 341-348; Tr. 12976. Obviously, the Court did not wholly agree with our argument and instead adjudicated the substance of PCL's breach claims. It is the Court's full and final adjudication of the transactional facts surrounding PCL's breach claims that eliminated any possible "second" claim based upon the same transactional facts. Florida Power & Light Co. v. United States, 41 Fed. Cl. 477, 483 (1998).

Government, PCL clearly never "expressly reserved" the right to submit a second, split, claim arising out of the same transactional facts.

Now, after filing its delay complaint, in early-stage conferences with the Court, PCL has not disputed that it is attempting to re-litigate the same transactional facts but has instead attempted to justify re-litigation by suggesting that the Court and/or the Government acquiesced to PCL re-litigating the same facts under the legal theories that was not previously presented (and were repudiated) by PCL.

PCL cannot, however, dispute that it never expressly reserved the right to re-certify and/or re-litigate claims arising out of the same transactional facts, therefore PCL is, by definition, arguing that the Court and/or the Government acquiesced to something that PCL itself never reserved the right to do.

## IV. The Court And The Government Did Not Acquiesce To A Split Claim By PCL

Again in obvious anticipation that its delay case may be barred by res judicata, PCL's delay complaint notes several colloquial statements made by the Court or Government counsel and we anticipate that PCL will argue that those statements constitute acquiescence to PCL's split claims and PCL's later submission of a delay-type claim. Delay complaint ¶¶ 111-117. This position is unavailing for at least t reasons. First, logic

dictates that neither the Court nor the Government could "acquiesce" to something that PCL itself never indicated any desire to do. That is, in the absence of a reservation of the right to split its claims (an event that clearly never occurred), neither the Government nor the Court could create such a reservation for PCL (and, actually, against PCL's will). Of course, as discussed above, not only did PCL choose not to split its claims, but PCL affirmatively declined to do so when the topic was addressed.[13] Tr. 13042.

The second reason that the Court and Government's statements cannot constitute acquiescence is that the reservation of rights by PCL and any corresponding acquiescence by the Government or Court would need to take the form of a formal agreement, pleading, document, or, at the very least, motion to the Court.

The Court of Appeals for the Federal Circuit has recognized that res judicata does not necessarily apply where the parties have agreed that it will not bar further claims. Epic Metals

[13] It is clear that PCL's aversion to contract-based claims (and claims of impossibility of analysis) was a calculated strategy to avoid a detailed examination of discrete delays and changes in favor of PCL's total breach (and, more important to PCL, total cost) claim. If PCL had submitted contract claims along with its breach claims, there is little question that the novel breach claims would have been pushed aside by the more traditional contract claims. Further, because of the certainty that PCL's contract claims lack significant merit (as proven by the factual findings in the Court's affirmed trial decision), even if there was some Government liability under contract-clause claims, PCL's total cost breach claim would appear patently inflated and unjustified in comparison.

Corp. v. H.H. Robertson Co., 870 F.2d 1574, 1576-77 (Fed. Cir. 1989)("a party may expressly reserve in a consent judgment the right to relitigate some or all issues that would have otherwise been barred between the same parties"); see also Hallco Mfg., Inc. v. United States, 256 F.3d 1290, 1295 (Fed. Cir. 2001); Nagle v. Franzese, 1991 U.S. Dist. Lexis 519, *15-16 (S.D.N.Y. 1991) (finding consent to split claims where the parties had expressly consented); Simmons v. New Pub. Sch. Dist. No. Eight, 251 F.3d 1210, 1214 (8th Cir. 2001)(party consented to splitting claims in a settlement agreement specifically giving opposing party the right to pursue a claim filed in a different court); Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co., 375 F. Supp. 2d 257, 366 (S.D.N.Y. 2005)("[C]laim preclusion will not apply . . . if the parties intended to settle only one part of a single claim and intended to leave another part open for future litigation").

With regard specifically to "acquiesence," comment a of section 26 of the Restatement (second) of Judgments suggests:

> Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action.
>
> * * * *
>
> [t]here may be an effective agreement, before an action is commenced, to litigate a part of a claim in that

> action but to reserve the rest of the claim for another action.

See also TRS Research, ASBCA No. 51712, 01-1 B.C.A. ¶ 31,149 at 153,874 (2000)(parties stipulated to dismissal of an action without an intention to settle another pending ASBCA claim).

Of course, nothing that resembles these examples happened prior to (or even during) the breach case. While the Court and Government counsel did discuss the matter at some length, including hypothetical scenarios whereby PCL would dismiss its breach case and submit a certified delay claim instead, these conversations hardly constitute official acts by either the Court or the Government. See, e.g., Restatement (Second) of Judgments § 26(1)(b)(1982), providing an exception to the application of claim preclusion when the court has "expressly reserved the plaintiff's right to maintain the second action" (emphasis added); see also Yapp v. Excel Corporation, 186 F.3d 1222, 1229 (10th Cir. 1999) (rejecting idea that court may impliedly split a claim and reserve a plaintiff's subsequent action).

Although there is no case precedent that fits these circumstance, perhaps because of the unlikeliness that a contractor would adamantly refuse to reserve its rights, or because contractors almost universally litigate a "kitchen sink" of legal theories arising out of their construction disputes instead of intentionally incur the expense of two litigations, the principle of res judicata – to conserve judicial resources

and to permit split claims only when justified, expressly reserved, and expressly permitted by the Court, clearly applies here.

Finally, as a practical matter, it was impossible for the Government to acquiesce to a claim that was expressly disavowed by PCL, or to waive res judicata for a decision that did not yet exist. Without the final decision of the trial court, it was impossible for the Government to know whether and how PCL's breach claims would be addressed and whether and to what extent all of the transactional facts of PCL's claim would be determined by the breach decision. The Court and Government colloquy took place in a context that assumed dismissal of PCL's breach complaint prior to full adjudication of the transactional facts at issue, or at the very least, in the presence of a simple rejection of PCL's breach claim on the ground that PCL's reservation of rights did not permit pursuit of that claim to final judgment. Instead, having pursued its breach claim to final judgment, including full adjudication of the transactional facts that gave rise to PCL's breach claim and a finding that PCL's breach claim was within the scope of PCL's earlier reservation of rights, PCL's delay complaint is now barred by res judicata regardless of what the Government anticipated might have

occurred if PCL's breach claim had been dismissed by PCL or resolved in a way other than a full adjudication on the merits.[14]

CONCLUSION

For the reasons above, we respectfully request the Court to grant this motion and enter judgment in favor of the Government upon the grounds that PCL's case is barred by res judicata.

Respectfully submitted,

PETER D. KIESLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

s/Brian S. Smith
BRIAN S. SMITH
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St. NW
Washington, D.C. 20530
Tele: (202) 616-0391

Attorneys for Defendant

[14] Ironically, PCL's counsel appears to have argued at the conclusion of the breach trial that PCL did, in effect, present a contract-clause case. That is, that the Court could reject PCL's breach of contract theories but still award PCL damages on the basis of the remedy-granting provisions of the contract. Tr. 13022-24. If so, then PCL is not really attempting here to re-litigate claims that it did not present at the breach trial but instead PCL is attempting to re-litigate a claim that PCL already presented at the breach trial.

November 10, 2006

CERTIFICATE OF FILING

I certify that on November 10, 2006, the foregoing brief was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Brian S. Smith