IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PCL CONSTRUCTION SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-144C |
| | ) | (Judge Horn) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, the United States, respectfully submits the following proposed findings of uncontroverted fact in support of our motion for summary judgment. Our proposed facts are supported by five documents, which are already before the Court; 1) PCL's first amended complaint it its breach of contract case ("breach complaint"), 2) the transcript from the breach trial, 3) PCL's post trial brief from the breach trial, 4) the Court's trial decision following the breach trial, 5) PCL's complaint in this case ("delay complaint").[1]

1. In the mid-1990s, plaintiff PCL Construction Services, Inc., ("PCL") partially performed a construction contract for the United States Bureau of Reclamation ("Reclamation") whereby PCL constructed the Hoover Dam visitor center and parking structure. PCL Construction Services, Inc. v. United States, 47 Fed. Cl.

[1] Although the documents relied upon in our motion are already before the Court, we propose to submit a "joint appendix" with PCL to collect all documents relied upon by both parties in our briefs.

745, 753-82 (2000)(hereinafter "PCL").

2. Near the conclusion of the project, PCL refused to perform further and was duly terminated for default. PCL's challenge to the default termination was rejected by this Court, and PCL did not appeal that aspect of the Court's decision. PCL at 811.

3. After its partial performance, PCL claimed that it believed that Reclamation imposed excessive contract changes upon PCL (PCL First Amended Complaint in case no. 95-666C ("breach complaint") ¶¶ 144, 154-155; PCL Complaint in case no. 06-144C ("delay complaint") ¶¶ 71), that the contract plans and specifications were "defective" (breach complaint ¶¶ 8, 117, 121, 122, 124, 132-136, 139-140, 143, 147-148, 212, 218, 288; delay complaint ¶¶ 43-44, 46, 48, 52) which disrupted and delayed PCL's contract performance (breach complaint ¶¶ 132-134, 290, 292-296; delay complaint ¶¶ 51-52, 57-58, 68), and that Reclamation otherwise "maladministered" PCL's contract. Breach complaint ¶¶ 149-164, 170, 173, 288-296; delay complaint ¶¶ 48-58, 67-68, 71, 79-80.

4. PCL depicted the alleged "perturbation" it experienced with RFI's, "CRXs" (instances where PCL believed it was entitled to extra compensation for contract changes), and other contemporaneous written correspondence but, notably, did not provide a single complete contractually-required time-impact

evaluation for any of its alleged construction difficulties. PCL at 745, 759, 761-764, 766, 768, 771, 773-774, 779, 812; breach complaint ¶¶ 144, 150-153; delay complaint ¶¶ 46, 58, 60-68, 72-80.

5. Some of the individual aspects of the project of which PCL complained were delays to the excavation of the back slope at the rear of the parking structure ("back slope")(breach complaint ¶ 128; delay complaint ¶¶ 33-37), problems and delays constructing the ring beam in the visitor center ("ring beam")(breach complaint ¶ 128; delay complaint ¶¶ 33-37), and extra costs and delays caused by the installation of a drag tie in the foundation of the parking structure ("drag tie") (breach complaint ¶ 128), among others (delay complaint ¶¶ 33-37).

6. PCL also periodically presented change order proposals in an attempt to negotiate payments for its individual CRXs. Delay complaint ¶¶ 72-29.

7. In 1994, with construction progressing towards substantial completion, PCL presented (but did not certify) a request for equitable adjustment ("REA") that sought approximately $23 million, based upon the entirety of PCL's construction delays and cost-overruns through July of 1993 – virtually all of which were blamed upon Reclamation. PCL at 803; breach complaint ¶¶ 166-171; delay complaint ¶¶ 14, 86-90.

8. PCL's REA purported to analyze the delays and disruptions caused by Reclamation and assigned most, but not all,

of the responsibility for PCL's delayed performance and cost overruns to Reclamation. PCL at 780, 803.

9. PCL's perturbations at the back slope, ring beam, drag tie, and as a result of PCL's CRXs were featured prominently in PCL's REA. Delay complaint ¶ 88.

10. Reclamation found no Government liability under PCL's REA based, in part, upon PCL's failure to provide valid contractually-required time-impact evaluations for its claimed delays and disruptions, but Reclamation indicated a willingness to consider further analysis by PCL in which Reclamation even volunteered to participate. PCL at 780; delay complaint ¶ 89.

11. Instead of certifying or further refining its REA, however, PCL chose to abandon the REA and instead submitted a certified claim based upon the exact same transactional facts as its REA (including the back slope, ring beam, drag tie, and contract changes). Breach complaint ¶¶ 128, 166-169; delay complaint ¶¶ 33-37, 86-90.

12. Without any indication that PCL wished to "split" its REA into two or more claims and to move forward with one claim while reserving another, PCL's certified claim simply characterized the same transactional factual events depicted in its REA as a "breach of contract," "fraud in the inducement," "hindrance", "cardinal change," and/or "defective specifications." Breach complaint.

13. When Reclamation denied PCL's certified claim, PCL appealed the denial to this Court by filing the breach complaint that mirrored both the REA and certified claim. The breach complaint was based upon the same transactional facts as both and specifically relied, again, upon perturbations at the back slope, ring beam, and drag tie, as well as unresolved CRXs and all of the same transactional facts set forth in the REA and certified claim. Breach complaint ¶¶ 5-6, 128, 165-169.

14. Again, PCL's breach complaint contained no indication whatsoever that PCL wished, or expressly reserved the right, to split its multiple legal theories away from other separate, un-litigated, claims based upon the same transactional facts. PCL's breach complaint simply repackaged the same transactional facts (delays and cost overruns allegedly caused by Reclamation's contract and maladministration thereof) into a series of legal theories based upon breach of contract, misrepresentation, superior knowledge, breach of implied warranty, cardinal change, and hindrance of performance.[2] Breach complaint.

15. PCL's breach complaint did not assert that PCL's delays and disruptions entitled PCL to relief under the changes clause

[2] PCL presented the same legal theories in its complaint as in its certified claim except it added counts for "illegally funded contract," and "illegal contract based upon violation of FAR Part 16". Breach complaint p 10.

(or any other clause) of the contract. Breach complaint, Prayer for Relief.

16. Although for ease of reference, PCL, the Court, and Government counsel periodically referred to PCL's case as a "breach of contract" or "total breach" claim, PCL actually litigated no fewer than six distinct legal theories – none of which are identical to each other. Breach complaint.

17. PCL's "fraud in the inducement" theory suggested that the original contract solicitation was so "severely defective" that PCL was duped into signing the contract. Breach complaint ¶¶ 210-233.

18. PCL's "cardinal change" theory, on the other hand, was based entirely upon events that occurred during performance -- that contract changes and the need for numerous RFIs and CRXs constituted a fundamental change to the nature and the scope of the contract. Breach complaint ¶¶ 298-303.

19. The only identical aspect of PCL's different legal theories was a demand for total cost damages of $31,040,071. Breach complaint, Prayer for Relief.

20. The "total" or "global" nature of PCL's breach claims more accurately describes the amount of damages sought by PCL, and the method of its calculation, rather than a single "global" construction event or time period covered by PCL's breach claim and complaint. PCL at 800.

21. The litigation of PCL's case was lengthy and expensive. PCL at 782.

22. It included a summary judgment proceeding whereby PCL's "illegal funding" claims were eliminated (PCL Construction Services. Inc. v. United States, 41 Fed. Cl. 242 (1998); delay complaint ¶ 19), two rounds of discovery which included depositions of approximately 40 fact witnesses (some deposed twice), analysis of PCL's case by six expert witnesses (four of whom were retained by PCL), separate claims by PCL challenging its termination for default and seeking return of liquidated damages and funds retained by Reclamation, a trial that occupied 51 days in Court over a period of 17 months (Tr. 12780), an unsuccessful multi-episode attempt to mediate a resolution to the case (which included yet another analysis of the project by an expert witness for PCL) (PCL at 782), and a Government counterclaim for defective components of the theater turntable feature of the visitor center that was defectively designed and constructed by PCL.

23. Although litigation of PCL's case provided PCL with the opportunity for a full and complete adjudication of the transactional factual events depicted in PCL's REA, certified claim, and breach complaint, PCL never attempted to (retroactively) split or expressly reserve any additional claims arising out of the same transactional facts.

24. PCL and its experts rejected the suggestion that a traditional contract-based delay/disruption/changes claim was more appropriate than PCL's many "breach" theories when they testified that a traditional schedule/delay analysis of the project was "impossible." See, e.g., Bennett Tr. 61-62, 698-700; Eudy Tr. 6351; Fenster Tr. 6477-78; Mizell Tr. 6540, 6719-6721; Kellogg Tr. 7900, 7903-4, 7943-7945, 8062, 8176; Schwartzkopf Tr. 12008.

25. PCL's president testified that PCL's own summary level schedule delay analysis was "wrong." Bennett Tr. 710; PCL at 802.

26. Throughout the litigation, the Government urged PCL to abandon its breach theories in favor of a contract-based claim.[3] See, e.g., Tr. 64-65 (opening statements).

27. PCL expressly refused to do so, even when cautioned by the Court as follows:

> The Court: Are you saying that your client is absolutely adamant that they will not present a certified claim at this point?
>
> Mr. Fenster: Yes, Your Honor.
>
> The Court: So be it. I think that's foolish, but so be it.

[3] Urging PCL to drop its breach claim in favor of a contract-based claim is very different from consenting or acquiescing to PCL splitting its claims into separately-litigated cases.

Tr. 13042

28. The trial-level litigation of the perturbations to the project concluded with this Court's 67-page decision that rejected all of the claims presented in PCL's breach complaint that arose from the transactional facts upon which PCL's REA and certified claim were based. PCL at 812.

29. PCL's appeal of this Court's trial decision was rejected, after full briefing and argument, in an unpublished decision of the United States Court of Appeals for the Federal Circuit. Delay complaint ¶ 23.

30. At no time during PCL's partial performance of the contract, the presentation of PCL's REA, the submission of PCL's certified claim, or the trial and appellate litigation of PCL's case, did PCL seek, or expressly attempt to reserve the right, to split its certified claim into separately submitted or litigated claims arising out of the same transactional facts.

31. In 2005, after retaining new counsel, PCL submitted two new certified claims to Reclamation that arise out of the same transactional facts (the alleged perturbation of PCL's partial contract performance) that were fully and finally resolved upon the merits in PCL's prior litigation – including the back slope, ring beam, drag tie and unresolved CRXs. Delay complaint ¶¶ 6, 8.

32. After denial of PCL's new delay/disruption/CRX claims by Reclamation upon the basis of res judicata, (delay complaint

¶¶ 7, 9) PCL filed the its delay complaint that seeks to re-litigate the same transactional facts – that were fully and finally resolved upon the merits in PCL's prior litigation. Delay complaint.

33. PCL's delay complaint asserts five grounds for recovery that rely upon the same transactional facts as PCL's breach complaint. They are: A type I differing site condition claim, a type II differing site condition claim, a changes clause claim, a "constructive changes" claim, and a suspension of work claim. Delay complaint ¶¶ 119-176.

34. PCL's delay complaint contains a section entitled "preservation of claims" that relies only upon contract modifications and correspondence from the construction period that predate PCL's breach complaint. Delay complaint ¶¶ 81-85.

35. Pages 220-222 of PCL's post-breach-trial brief (arguing that the release/reservation language in bilateral contract modifications did not bar PCL's breach claim) is almost word-for-word with paragraphs 81-85 of PCL's delay complaint.

Respectfully submitted,

PETER D. KIESLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

s/Brian S. Smith

BRIAN S. SMITH
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St. NW
Washington, D.C. 20530
Tele: (202) 616-0391

Attorneys for Defendant

November 10, 2006

CERTIFICATE OF FILING

I certify that on November 10, 2006, the foregoing brief was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Brian S. Smith