IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PCL CONSTRUCTION SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-144C |
| | ) | (Judge Horn) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ........ iii

TABLE OF CONTENTS OF APPENDICES ........ vi

INTRODUCTION ........ 1

STATEMENT OF FACTS ........ 2

A. PCL's Reservation of Claims ........ 2

B. PCL's Certified Breach of Contract Claim ........ 3

C. The Contracting Officer's Final Decision on PCL's Breach Claim ........ 5

D. PCL's Breach of Contract Complaints and Trial ........ 5

E. Opening Statement by the Government ........ 6

F. The Government's Post Trial Brief ........ 7

G. Settlement Efforts and the Government's May 27, 1999 Letter ........ 8

H. Closing Argument by the Government ........ 9

I. This Court's Decisions on PCL's Litigated Claims ........ 14

J. PCL I - The Breach Decision ........ 14

K. PCL II - Liquidated Damages Decision ........ 15

L. PCL's Appeal ........ 16

M. PCL's Certified CRX and D&D Claims ........ 16

ARGUMENT ........ 16

A. Standard of Review ........ 16

B. The Court Did Not Have Jurisdiction in the Breach Case to Hear PCL's Claims for Equitable Adjustment ........ 17

C. PCL's Complaint Is Not Barred By the Doctrine of Res Judicata ........ 26

Page

D. PCL's Current Claims Do Not Arise Out of the Same Transactional Facts Upon Which PCL's Breach Claim Was Based ....................................................27

E. The Court Expressly Reserved Decision on PCL's Claims for Equitable Adjustment....................................................................................................30

F. The Government Tacitly Agreed or Acquiesced in PCL Bringing More Than One Claim ............................................................................................................32

G. The Doctrine of Collateral Estoppel, or Issue Preclusion, May Affect Only Very Specific Facts Relating to PCL's Claims ....................................................36

CONCLUSION ............................................................................................................38

Page

## TABLE OF AUTHORITIES

***CASES***


Aguirre v. Albertson's, Inc., 117 P.3d 1012 (Ore. App. 2005) ............ 33, 36

Alliant Techsystems, Inc. v. United States, 178 F.3d 1260 (Fed. Cir. 1999) ............ 18, 19

Ammex, Inc. v. United States, 334 F.3d 1052 (Fed. Cir. 2003) ............ 26, 27, 28

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ............ 16

Bailey v. United States, 54 Fed. Cl. 459 (2002) ............ 26, 27

Bankruptcy Estate of Lake Geneva Sugar Shack, Inc. v. General Star Indemnity Co., 200 F.3d 479 (7th Cir. 2000) ............ 35, 36

Banner v. United States, 238 F.3d 1348 (Fed. Cir. 2001) ............ 37

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............ 17

Cerberonics, Inc. v. United States, 13 Cl. Ct. 415 (1987) ............ 20, 21

Clements v. Airport Authority of Washoe County, 69 F.3d 321 (9th Cir. 1995) ............ 26

Contract Cleaning Maintenance, Inc. v. United States, 811 F.2d 586 (Fed. Cir. 1987) ............ 21

Croman Corp. v. United States, 44 Fed. Cl. 796 (1999) ............ 16, 17, 19, 21

Doctor's Exchange of South Carolina, P.C. v. America's Best Contacts and Eyeglasses, Inc., 2002 U.S. App. Lexis 592 (4th Cir. 2002) ............ 32

Dodd v. Hood River County, 59 F.3d 852 (9th Cir. 1995) ............ 31, 36

ECC International Corp. v. United States, 43 Fed. Cl. 359 (1999) ............ 19, 20

England v. The Swanson Group, Inc., 353 F.2d 1375 (Fed. Cir. 2004) ............ 20

Franklin Sav. Corp. v. United States, 56 Fed. Cl. 720 (2003) ............ 37

Jet, Inc. v. Sewage Aeration Systems, 223 F.3d 1360 (Fed. Cir. 2000) ............ 26, 27, 28

Johnson Controls World Services, Inc. v. United States, 43 Fed. Cl. 589 (1999) ............ 20

Kiewit Construction Co. v. United States, 56 Fed. Cl. 414 (2003) ............ 19, 20

Page

Kinetic Builder's Inc. v. Peters, 226 F.3d 1307 (Fed. Cir. 2000)............18

Land Grantors in Henderson, Union and Webster Counties, Ky. v. United States, 64 Fed. Cl. 661 (2005)............28

Manual Bros., Inc. v. United States, 55 Fed. Cl. (2002)............19, 20, 21, 22

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)............17

Mosely v. United States, 15 Cl. Ct. 193 (1988)............26

PCL Construction Services, Inc. v. United States, 47 Fed. Cl. 745 (2000)............14, 15, 31

PCL Construction Services, Inc. v. United States, 53 Fed. Cl. 479 (2002)............14, 15, 31

Phoenix Petroleum Co. v. United States, 1999 U.S. App. Lexis 16939 (Fed. Cir. 1999)............26

Placeway Constr. Corp. v. United States, 920 F.2d 903 (Fed. Cir. 1990)............18

Pueschel v. United States, 369 F.3d 345 (4th Cir. 2004)............35

Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995)............19

Reliance Insurance Co. v. United States, 931 F.2d 863 (Fed. Cir. 1991)............21

Renda Marine, Inc. v. United States, 71 Fed. Cl. 378 (2006)............20, 22, 23

Rosado v. General Electric Circuit Breakers, Inc., 805 F.2d 1085 (1st Cir. 1986)............32, 36

Rotec Industries, Inc. v. Mitsubishi Corp., 348 F.3d 1116 (9th Cir. 2003)............33

Smith v. United States, 59 Fed. Cl. 64 (2003)............26

Super Van, Inc. v. City of San Antonio, 92 F.3d 366 (5th Cir. 1996)............26, 33

The Sharman Co. v. United States, 2 F.3d 1564 (Fed. Cir. 1993)............20, 21

The Young Engineers v. United States International Trade Commission, 721 F.2d 1305 (Fed. Cir. 1983)............26, 27

Torres v. Rebarchak, 814 F.2d 1219 (7th Cir. 1987)............26, 27, 30, 32

United States v. Haytian Republic, 154 U.S. 118 (1894)............28

Washington Public Power Supply System v. Pittsburg-Des Moines Corp., 876 F.2d 690 (9th Cir. 1989)............30, 31

Page

***STATUTES***

Contract Disputes Act, 41 U.S.C. § 601, et. seq ............................................... 3, 16, 17, 18, 19, 21

Federal Acquisition Regulations, 48 C.F.R. § 33.201 ........................................................ 19

***OTHER AUTHORITY***

R.C.F.C. 56(c) ........................................................................................................... 16

Restatement (Second) of Judgments ............................................ 26, 27, 28, 30, 31, 32, 35, 36, 37

# TABLE OF CONTENTS OF APPENDICES

Binder

APPENDIX 1 – VERSIONS OF THE RELEASE CLAUSES IN CONTRACT MODIFICATIONS ..... 1

APPENDIX 2 – CONTRACT MODIFICATIONS ..... 2

APPENDIX 3 – CORRESPONDENCE ..... 3

APPENDIX 4 – BREACH CLAIM ..... 1

APPENDIX 5 – FINAL DECISION ..... 1

APPENDIX 6 – BREACH COMPLAINT ..... 1

APPENDIX 7 – TRIAL TRANSCRIPT ..... 1

APPENDIX 8 – SELECTED PAGES OF POST TRIAL BRIEF ..... 1

APPENDIX 9 – MAY 27, 1995 LETTER ..... 1

APPENDIX 10 – CRX CLAIM ..... 1

APPENDIX 11 – D&D CLAIM ..... 1

APPENDIX 12 – FINAL DECISION ON CRX CLAIM ..... 1

APPENDIX 13 – FINAL DECISION ON D&D CLAIM ..... 1

Plaintiff PCL Construction Services, Inc. ("PCL") submits this response to the Government's Motion for Summary Judgment based on *res judicata,* and states as follows:

## INTRODUCTION

The Government's motion should be denied for several reasons. First, the doctrine of *res judicata* has no application to this matter because this Court did not have jurisdiction to hear or determine PCL's delay and disruption claim in the earlier proceeding. The Contract Disputes Act ("CDA") is unique in that it expressly anticipates and provides for multiple proceedings arising out of a single contract. The CDA also has strict jurisdictional requirements that were not met and which precluded the Court from considering a delay and disruption claim in the previous proceeding. The CDA's express allowance of claim "splitting" and the absence of jurisdiction in the breach trial over PCL's current claims renders the doctrine of *res judicata* inapplicable.

Second, even if the doctrine of *res judicata* applied, the third prong of the *res judicata* test – that the two matters arise out of the same set of operative and transactional facts – cannot be met in this instance. The nucleus of operative facts in PCL's breach case is completely different and distinct from those in this matter.

Finally, if the Court were to reject both of the preceding arguments, two exceptions to the application of *res judicata* are applicable. A recognized exception to *res judicata* exists where a court withholds or reserves a claim. During the trial of the Breach Claim, this Court specifically stated that any absolute conclusions regarding PCL's entitlement to delay and disruption damages were "reserved for any claim that PCL may elect to bring for a delay claim." It is also established that where a defendant has agreed in terms or in effect that a plaintiff may split its

claim, or has acquiesced, *res judicata* does not bar a second suit. In this instance, the Government explicitly agreed to and acquiesced in PCL bringing two claims.

For the foregoing reasons, and as described more fully herein, the Government's Motion for Summary Judgment should be denied.

PCL suggests that the issues for the Court to decide are:

(1) Whether the doctrine of *res judicata* applies in this case where the Court did not have subject matter jurisdiction to hear PCL's delay and disruption claim in the breach trial;

(2) Whether *res judicata* applies where PCL's delay and disruption claim is not based on the same set of transactional facts as its Breach Claim; and

(3) If the doctrine of *res judicata* would otherwise apply, whether the exceptions based on a reservation of the claim by the Court and the Government's consent to or acquiescence in PCL bringing two claims are applicable.

## STATEMENT OF FACTS

### A. PCL's Reservation of Claims

PCL reserved its right to submit a delay and disruption claim during its performance of the Contract. Beginning in late 1992, Contract Modifications executed by PCL and the United States Bureau of Reclamation ("USBR") included language that reserved PCL's right to submit claims for time and cost impacts. Over time, the wording of the release in the Modifications evolved through four different versions. The final version of the release clause provided:

> The Contactor agrees that this supplemental agreement is a complete equitable adjustment for all Contractor proposals or claims whatsoever arising out of, resulting from, and/or directly related to the above occurrences, revisions to the contract, and/or supplemental agreement and hereby releases the Government from all liability under this contract for further equitable adjustments for said occurrences, revisions, and/or this supplemental agreement, ***except for time and cost impacts for extended overhead, for impacts on unchanged work, and for any contribution toward the cumulative impact of all changes on the critical path of the project schedule.***

(Emphasis added.) This version was included in the majority of the Modifications that form the basis for PCL's delay and disruption claim in this case. Appendix 1 is a summary of the different versions of the release language used in the various Modifications.

Significantly, after PCL submitted its certified breach claim on July 25, 1995 ("Breach Claim"), the USBR continued to issue Modifications that reserved PCL's right to file a delay and disruption claim. *See* Modifications 136-143, Appendix 2.

In addition to the release clauses contained in the Modifications, PCL included claim reservation language in letters sent to the contracting officer and other USBR representatives concerning the Modifications. The following language is typical of such letters:

> [This CRX is] based solely on the usual cost elements; such as, labor, material, and normal markups, and does not include any amount for changes in sequence of work, delays, disruptions, rescheduling, extended overhead, acceleration, and/or impact costs. ***The right is expressly reserved to make a claim for any and all of these, and related items of cost, prior to any final settlement*** of this contract.

Correspondence, Appendix 3 (emphasis added).

B. PCL's Certified Breach of Contract Claim

On July 25, 1995, PCL submitted its certified Breach Claim to the USBR contracting officer pursuant to the Contract Disputes Act of 1976 ("CDA"), 41 U.S.C. §605(c). Breach Claim, Appendix 4. The Breach Claim stated two primary legal bases for the requested recovery: (1) breach of contract; and (2) a violation of the Anti-Deficiency Act. PCL asserted that the USBR breached Contract No. 1-CC-30-09150 ("Contract") by (a) making material

misrepresentations during the award process; (b) fraudulently inducing PCL into accepting the Contract; (c) materially hindering PCL's ability to perform the Contract; and (d) making a number of cardinal changes during PCL's performance. *See id.* PCL also asserted that the Contract was illegal and void as a result of the USBR's violation of the Anti-Deficiency Act and, therefore, the Contract should be reformed to provide PCL recovery of its costs of performing the Contract or, in the alternative, that PCL should be compensated on a *quantum meruit* basis. *Id.*, p. 60.

PCL's Breach Claim made specific allegations concerning the USBR's acts and failures to act which amounted to a breach of the Contract. The specific allegations fell into four categories as follows:

> (1) Misrepresentation. The USBR issued "profoundly defective" drawings and specifications at the time of award. "The severity of those defects renders the contract terms covering changes, site conditions and other adjustments inadequate as remedies and renders the USBR liable for breach of contract for misrepresentation." *Id.*, p. 2.
>
> (2) Fraud in the Inducement. The USBR was aware, while PCL was not, that the drawings for the work were severely defective and would impact PCL's performance yet failed to notify PCL of the defects and nevertheless, awarded the Contract on a firm fixed price basis. "An FFP contract, however, is appropriate only when Contract drawings are accurate and the Contract can be performed as bid. As a result, the USBR breached the Contract through a fraud in the inducement." *Id.*
>
> (3) Hindrance. The USBR failed to properly administer the Contract. "The USBR substantially hindered PCL's performance by: (1) failing to resolve design defects so as not to delay the work; (2) imposing unreasonable contract interpretations on PCL; (3) failing to make timely payments to PCL; and (4) failing to support contract administration functions with adequate and qualified personnel." *Id.*, pp. 50-51.
>
> (4) Cardinal Change. "Because of the severely defective condition of the drawings and specifications at time of award, the substantial changes in the physical nature of the structures that occurred during Contract performance, and the substantial change in PCL's duties during Contract performance, PCL was forced to identify drawing deficiencies and then construct to meet changed requirements over a substantially protracted period." *Id.*, p. 3.

PCL asserted that it was entitled to recover "all damages caused by the breach of contract which were foreseeable at the time of contracting." *Id.*, p. 53. PCL sought total cost damages in the amount of $31,040,071. *Id.*, p. 57.

C. The Contracting Officer's Final Decision on PCL's Breach Claim

On September 21, 1995, Carolyn Tempel, the USBR contracting officer, issued a final decision denying PCL's Breach Claim in its entirety. Final Decision, Appendix 5. In denying the claim, the contracting officer noted that "[o]n April 24, 1994, PCL submitted a Request for Equitable Adjustment (REA) based on a variety of different theories. This office responded on February 24, 1995, found little merit in the information presented in the REA, and suggested that the parties arrange a fact finding meeting. PCL rejected the invitation to meet and instead filed the instant Claim." *Id.* The contracting officer stated that by filing its July 25, 1995 Breach Claim, the USBR considered PCL as having withdrawn its earlier REA, and the Breach Claim was "essentially, an all or nothing claim. Accordingly, ***we have evaluated the Claim based solely on the breach of contract and void contract theories.***" *Id.*, p 2 (emphasis added). The summary of the contracting officer's final decision stated, in relevant part:

> I find that there has not been a breach of the contract, that the contract was legally executed, and that PCL has failed to demonstrate that each and every problem associated with the project was caused by the Bureau. Accordingly, since PCL has provided no means for me to determine the merits of any isolated part of the Claim, that may, in fact, have merit, or any means to apportion fault and identify the associated damages, the Claim as submitted is denied.

*Id.*, p. 12.

D. PCL's Breach of Contract Complaints and Trial

On October 4, 1995, PCL filed a Preliminary Complaint in the Court of Federal Claims which appealed the contracting officer's September 21, 1995 final decision denying PCL's Breach Claim. *PCL Construction Services, Inc. v. The United States*, Case No. 95-666.

Subsequently, on April 1, 1996, PCL filed a First Amended Complaint, which substantially mirrored its Preliminary Complaint ("Breach Complaint"). First Amended Complaint, Appendix 6.

The Breach Complaint contained ten counts which were virtually identical to the issues PCL had raised in its Breach Claim. The count, claim for relief and basis for each are:

| Count | Claim for Relief | Basis |
|---|---|---|
| I | Breach of Implied-In-Fact Contract | Fraud in the Inducement |
| II | Breach of the Contract | Fraud in the Inducement |
| III | Breach of the Contract | Superior Knowledge Regarding Design |
| IV | Breach of the Contract | Misrepresentation |
| V | Breach of the Contract | Breach of Warranty Regarding Accuracy of Drawings and Specifications |
| VI | Breach of the Contract | Superior Knowledge Regarding Design Agent's Performance |
| VII | Breach of the Contract | Breach of Duty Not to Hinder or Delay |
| VII | Breach of the Contract | Cardinal Change |
| IX | Illegal Contract | Violation of FAR §§16.103(a) and 16.202-2 |
| X | Illegal Contract | Violation of 31 U.S.C. §§1341, 1342 and 1502 |

The Breach Complaint sought damages of $31,040,071, plus appropriate CDA interest, attorneys' fees and costs. The parties agreed to bifurcate the proceedings, conduct the trial on entitlement only and reserve for a later time the issue of determining damages.

E. Opening Statement by the Government

During the Government's opening statement numerous references were made to PCL's reservation of rights. The Government expressly acknowledged the nature and scope of PCL's reservation concerning government-caused delay and disruption. Excerpts from the trial transcript are contained in Appendix 7. There is nothing contained in the Government's opening

statement which either disputes or contests PCL's reservation of its delay and disruption claim or its right to pursue such a claim at a later time. The following are some of the key statements made by the Government during its opening statement concerning PCL's reservation:

> This is a breach of contract claim. It is not a claim for extended overhead, impacts of unchanged work and any contribution toward the cumulative impact of all changes on the critical path of the project schedule.

*Id.*, p. 58: 10-13.

> So when PCL signed this bilateral modification relating to the ring beam releasing everything except this type of delay claim it was simply preserving for itself a right that it had under the contract to seek a delay cost related to the ring beam. But that's all, and that is not what is before you today.

*Id.*, pp. 59:22 - 60:2.

> They -- PCL will not and has never submitted the type of critical path analysis that it reserved itself -- reserved for itself the right to do if not promised to do in those modifications.

*Id.*, p. 64:15-18.

F. The Government's Post Trial Brief

The Government submitted its 328-page Post Trial Brief to the Court on May 24, 1999. Selected portions of the Post Trial Brief are contained in Appendix 8. In addition to its detailed arguments related to PCL's Breach Claim, the Government's brief contains several references to PCL's reservation of its delay and disruption claim. *See id.*, pp. 18-19; 24; 25; 32; 33; 41; 47; 54; 61; 62; 165; 224-25; 243; 286-287; 288; 289; 290. The following statements are particularly relevant:

> It was only after PCL had completed a substantial part of the contractual procedure, and had only to substantiate any delay or impact costs related to the changes already the subject of bilateral contract modifications, that PCL chose to abandon that process and break its agreement to seek compensation in that manner. Paradoxically, however, even after PCL had presented its breach of contract claim, it executed contract modifications that released Reclamation from "all liability" for claims except a critical path, delay/impact, claim. Ex. 2284

> Mods. 131-144 (36 CRXs were negotiated and resolved via modifications 131 thru 144 (totaling $351,067) *after* PCL had submitted its breach of contract claim.

*Id.*, p. 184, n. 77 (emphasis in original).

> Although PCL has never placed a bona fide delay/impact claim within the jurisdiction of this Court . . ..
>
> PCL never presented a delay/impact claim to the contracting officer even though, as we discuss in more detail below, PCL released Reclamation from "all liability" for claims *other than delay/impact claims in bilateral modifications that relate to virtually all of the contract changes that PCL relies upon to support its case.*

*Id,*. p. 325, n. 90 (emphasis added).

G. Settlement Efforts and the Government's May 27, 1999 Letter

At the Court's urging and at significant expense,[1] shortly before the Government filed its Post Trial Brief, PCL sent a time-impact analysis to the Government in an attempt to initiate settlement discussions. In a May 27, 1999, letter from Brian S. Smith to Herbert L. Fenster, Appendix 9, the Government rejected PCL's offer to discuss settlement based on a time-impact analysis. In doing so, the Government outlined its position concerning PCL's reserved claims:

> ***[W]e will not engage in discussion with PCL unless and until*** PCL dismisses its breach of contract case with prejudice and submits a certified equitable adjustment claim for delay/impacts, or ***the Court enters judgment in favor of the Government on all counts of PCL's breach of contract case and PCL submits a certified equitable adjustment claim for delay/impacts.*** If, on the other hand, the Court finds in favor of PCL upon any aspect of PCL's breach of contract case, the substance of the Court's decision will, by definition, dictate the parameters of any "damages" proceedings and any subsequent settlement discussions.

*Id.*, p. 2 (emphasis added).[2]

[1] PCL spent approximately $100,000 to have an expert prepare the time-impact analysis.

[2] In its motion, the Government suggests that it only urged PCL to drop its Breach Claim in favor of a contract-based claim. Motion, pp. 9, n. 9; 20. This is incorrect. The Government also was clear that if the Court ruled in the Government's favor in the breach trial that PCL could still submit a certified equitable adjustment claim.

H. Closing Argument by the Government

In its closing argument on July 2, 1999, the Government again expressly and specifically acknowledged PCL's reservation of its delay and disruption claim. Government counsel actually read one of the forms of release and reservation language which the USBR and PCL had executed. Trial Transcript, Appendix 7, pp. 12976:18-12977:10. The Government then opined on the "plain meaning" of the release and reservation:

> So that the plain meaning of this release is, We are reserving for ourselves the right to show you any critical path delay caused by that vehicle ramp change, but we are releasing all contractor proposals or claims whatsoever arising therefrom.

*Id.*, p. 12977:17-21.

Several times during the Government's closing argument the Court asked questions concerning PCL's reservation of rights. The Court's questions and the Government's responses bear directly on the pending motion for summary judgment:

> THE COURT: The impact of the changes would survive?
>
> MR. SMITH: They did not release the right to present an equitable adjustment delay claim.
>
> THE COURT: ***And that would be the only thing that would survive?***
>
> MR. SMITH: Yes. Exactly. That is what we're saying, is that is the only thing that survived this release. They reserved for themselves the right to do it. And yeah, you're right, our position certainly is this case has not and has never been, either in its pleading form or in its evidence form, that kind of claim. And their experts said it 100 times. "No, this is not a critical path delay claim. This is not an equitable adjustment claim. This is a breach claim." Blah, blah, blah. ***So they reserved the right to take the equitable adjustment claim for delays caused by the changes to the vehicle ramp.***

*Id.*, pp. 12978:25-12979:19 (emphasis added).

After the Government concluded its arguments addressing each of the counts in PCL's Breach Complaint, the Court and Government counsel discussed at some length various options which might be available to resolve the parties' dispute. The trial transcript clearly reflects the

Government's position on each option. The threshold issue before the Court was whether PCL had proved there was a breach of contract by the USBR. If the Court found a breach of contract, the parties would then either have negotiated a settlement or a second damages trial would have occurred. However, if the Court found no breach, then the Government explicitly stated it believed PCL was entitled to bring a delay and disruption claim based on its acknowledged reservations. Again, the transcript is clear concerning the Government's representations to the Court. After urging the Court to find "no breach" on all of PCL's breach of contract counts, Government counsel stated what he believed should then happen:

> MR. SMITH: ***Then PCL will be free to go off and make an equitable adjustment claim if it wants to. The contracting officer will get an opportunity to pass on it, as he has never been provided. And if the parties do not resolve them at that level, it will proceed just like a normal case. And maybe or maybe not you and I will see each other again litigating an equitable adjustment claim for delay. But that is the effect of what happens if you find no breach.***
>
> THE COURT: And you're taking the position that despite all of the back and forth with the contracting officers in this case, including the good, the bad, and the ugly, that this equitable adjustment claim was never presented to the contracting officer or was simply never properly offered in this particular case, because they're different?
>
> MR. SMITH: ***No equitable adjustment claim was ever presented to the contracting officer as a certified claim, which is the gate through which they must pass to get to this Court.*** There is a certified claim, but it's a breach of contract claim.
>
> THE COURT: So the only certified claim you're saying that was presented to the contracting officer was for breach of contract?
>
> MR. SMITH: Yes. And we cite that in our brief. And the exhibit itself, that is their certified claim, certainly the cover letter is very easy for you to read, for you to pass on that issue too. There was no middle ground in that claim. They did not present an alternative basis as an equitable adjustment. And you heard PCL's witnesses tell you we were pursuing breach here.

*Id.*, pp. 12995:7-12996:14 (emphasis added). The thrust of the Government's argument was clear – a finding against PCL on its Breach Claim would not impede PCL's ability to later pursue

a time-impact claim. Thus, the Government argued that the Court should rule in favor of the Government, because such a ruling would not prejudice PCL.

After discussing the uncertified request for equitable adjustment which PCL had submitted to the contracting officer and which did not result in a resolution of PCL's various claims, the Court and Government counsel continued their dialogue concerning the Government's position on the requirement for a certified claim as a condition precedent to a direct access claim:

> THE COURT: I'm just trying to understand your position.
>
> MR. SMITH: ***Our position is the only certified claim - which is the gate we must walk through to get to this Court - that was presented to the CO is a breach of contract claim.*** And no matter how you try to read it, ***there was no equitable adjustment claim there.***
>
> * * *
>
> Frankly, ***legally I don't think it's possible to take the evidence in this case and arrive at a liability determination for equitable adjustment. Not only was it not pled that way, it was not presented that way either.*** PCL didn't try to show you we're liable for an equitable adjustment for the ped ramp or for the triangular bridge, and certainly not for a lot of the other things. Let's not forget that over half of the 665 days of delays occurred after all of these issues that we've been talking about at this trial were resolved. The second half of the project, after they were out of the ground. They're inside, they're building, they [sic] doing things, and they're getting delayed a lot. And nobody's presented any evidence about whose fault that was, or anything whereby you could determine any type of liability for an equitable adjustment.
>
> THE COURT: There's been some talk in this case at various points that there is grounds for an equitable adjustment . . . . But there's certainly been language that there's some grounds for equitable adjustments.
>
> * * *
>
> But what's the correct result here? Do we send this back to the contracting officer while maintaining jurisdiction or not maintaining jurisdiction? I can do it one of several ways. Lets assume that's where I go for a moment, again, without telling you where I'm going. But talking hypothetically, let's assume that I think the right result is, in fact, to go the equitable adjustment route. We can dismiss the case at this point without prejudice, or with prejudice, on the issues that we've

> decided and send it back. I can obviously, and would, I guarantee you, make sure that it came back to me . . . .

*Id.*, pp. 12999:4-13001:9 (emphasis added). In responding to the Court's question, "But what's the correct result here?", Government's counsel was very specific:

> MR. SMITH: That is what you should do. ***You should find that there was no breach of contract here***, that all of those counts that I just went over were not proven. ***Maybe there's an equitable adjustment liability out there somewhere.*** Fine. That's not for your to decide right now, ***because it's not before you and it can't be before you . . . .***

*Id.*, pp. 13001:22-13002:3 (emphasis added). The Government then made what, given its motion, is an astonishing assertion:

> MR. SMITH: ***We, the Bureau, are ready, and the contracting officer has always been and continues to be ready to adjudicate an equitable adjustment claim.***
>
> THE COURT: Who's the contracting officer now? Because if it's the interim one, nobody will be ready to do anything. And I'll make that comment on the record.
>
> MR. SMITH: It is not. In fact, I'm not even sure what the contracting officer's name is at this point. But that is - again, by the book, ***that is what needs to happen here. And frankly, I don't think there's any other way for it to be dealt with.***
>
> THE COURT: Assuming you're right on the breach of contract theory –
>
> MR. SMITH: Exactly. Obviously if I'm not, I concede that we go off on a breach of contract thing. So that's where we are. ***I don't think you can legally find an equitable adjustment here.*** A, because it was never presented. B, because the evidence of it was never offered. Certainly not in a way that is competent for you to make an intelligent equitable adjustment ruling. ***You simply haven't been given the tools to do that. By design, PCL was never pursuing an equitable adjustment. They were pursuing a total breach case.*** Those are your alternatives. You know what I think you should do with those alternatives.

*Id.*, pp. 13002:25-13004:1 (emphasis added).

The final dialogue between the Court and Government's counsel reaffirms PCL's reservation of its delay claims and the Government's willingness to review the merits of a certified delay claim:

> THE COURT: Let's assume we do not find a total breach for a moment. Is there any potential for reviving the settlement process at that point, given that you've done a fair amount of work, that that is probably a decent forum with which to do it, rather than to litigate it? And there are two parts of to that question. Is it appropriate to revive it before going to the contracting officers, or only after a certified claim is presented to the contracting officer. Mr. Smith?
>
> MR. SMITH: That.
>
> THE COURT: The second?
>
> MR. SMITH: Yeah.
>
> THE COURT: When you say "that," you're talking about the second alternative?
>
> MR. SMITH: Yes, to me, that's the most fruitful avenue for speedy resolution.
>
> THE COURT: That's not the speediest resolution?
>
> MR. SMITH: ***Speediest would be to have PCL certify a legitimate delay claim, and then we'll sit down and chat.***

*Id.*, pp. 13036:9-13037:6 (emphasis added).[3]

It is particularly striking that when it served the Government's purpose to do so, the Government freely acknowledged that PCL could, at any time, certify a delay and disruption claim and then the parties would "sit down and chat." Now, after PCL has accepted the Government's repeated invitation to certify such a claim, the "chat" seems to include only the word "no."

---

[3] The Government is correct that PCL's counsel declined the Court's invitation to submit a certified equitable adjustment claim at the time of the breach trial. *See* Motion, p. 9. But he declined to submit such a claim only "at this point" in time and only after the Government had flatly refused to engage in settlement discussions based on the May 21, 1999 time-impact claim provided by PCL. *See id.*

I. This Court's Decisions on PCL's Litigated Claims

After the trial of PCL's Breach Claim, this Court issued two written decisions. In its September 20, 2000 decision in *PCL Construction Services, Inc. v. United States*, 47 Fed. Cl. 745 (2000) ("PCL I"), the Court held that "PCL has failed to demonstrate a breach of contract" and found that "the separable, uncompleted portion of the contract was subject to a proper termination for default." *Id.* at 812.

In its August 28, 2002, decision in *PCL Construction Services, Inc. v. United States*, 53 Fed. Cl. 479 (2002) ("PCL II"), the Court held than "under the rule against apportionment, the government's delay of the project results in the annulment of the liquidated damages provisions" and "[i]n the alternative under the clear apportionment rule, the court likewise denies the government's assessment of liquidated damages because no clear apportionment of the delay that occurred on the project has been established in the record." *Id.* at 493.

J. PCL I - The Breach Decision

In PCL I, the Court expressly recognized PCL's reservation of its right to submit a delay claim. In numerous instances, the Court specifically referenced PCL's reservation in its CRX submissions and the bilateral Modifications. For example, in regard to Modification 67, the Court found: "Bilateral modification 67 resolved CRX 94, with PCL reserving the right to pursue a delay claim later." 47 Fed. Cl. at 763-764. The Court made similar findings in no less than twelve other instances when referring to the execution of Contract Modifications. *Id.* at 759, 761, 764, 766, 767, 771, 773, 787, n. 43.

The Court also acknowledged that: "PCL has never submitted a contractual claim seeking payment for unresolved CRX's." *Id.* at 777. Most importantly, the Court expressly recognized PCL's right to submit a delay claim. The Court found:

> Although Mr. Caruso's testimony was considered sufficient to rebut the plaintiff's allegations of hindrance to the extent of breach of contract, [FN48] the specifics as to the amount of delay were not embraced in total by the court based on the testimony and evidence offered. Nor does the court need to reach such a conclusion for the purposes of this opinion . . . .
>
> [FN48] In other words, the testimony at trial of fact witnesses buttressed the analysis and conclusions of the defendant's expert report; however, the absolute conclusions are not adopted by the court and ***are reserved for any claim that PCL may elect to bring for a delay claim . . . .***

*Id.* at 802 (emphasis added).

K. <u>PCL II - Liquidated Damages Decision</u>

In PCL II, the Court also referenced PCL's reservation of its right to submit a delay claim when it discussed Contract Modifications. "PCL's proposal which led to Modification 54 did not include a time impact evaluation, although PCL reserved the right to submit such an evaluation at a later time." 53 Fed. Cl. at 488. The Court also expressly found that the USBR, at the very least, caused some of the project delays:

> Although the court has found that the government did not delay the construction of the project to the extent plaintiff claims, and, therefore, did not breach the contract, based on the evidence adduced at trial, ***it is clear that the government did contribute to the delay.***

*Id.* at 489 (emphasis added). Further, the Court stated that "neither party has submitted evidence which relates, with sufficient credibility, how changes and delays affect other delay present in the case." *Id.* Finally, the Court incorporated its decision in PCL I , finding that PCL reserved its delay claim:

> In other words, the testimony at trial of fact witnesses buttressed the analysis and conclusions of the defendant's expert report; however, the absolute conclusions are not adopted by the court and ***are reserved for any claim that PCL may elect to bring for a delay claim.***

*Id.* at 491 (emphasis added).

L. PCL's Appeal

PCL appealed this Court's decisions in PCL I and PCL II to the United States Court of Appeals for the Federal Circuit. *PCL Construction Services, Inc. v. United States*, 96 Fed. Appx. 672 (2004). In affirming this Court's decisions, the Federal Circuit did not address PCL's reservation of claims.

M. PCL's Certified CRX and D&D Claims

As stated in PCL's Complaint filed in this action, on April 28, 2005, PCL submitted a certified claim to the USBR contracting officer, pursuant to 41 U.S.C. § 605(c), in the amount of $2,399,483, seeking additional direct costs under remedy granting provisions of the Contract for changes in the scope of the Contract ("CRX Claim"). *See* Appendix 10. Subsequently, on September 12, 2005, PCL submitted a certified claim to the contracting officer in the amount of $19,669,050, requesting costs incurred by PCL when it was delayed and disrupted by the Government in performing the Contract ("D&D Claim"). The D&D claim is specifically based on the changes, suspension of work and differing site conditions clauses of the Contract. *See* Appendix 11. Without addressing the merits of either the CRX or the D&D claim, both were denied by the contracting officer in separate final decisions on September 30, 2005 and January 13, 2006, respectively. *See* Appendix 12 and 13. The contracting officer denied the claims stating that both were barred by the doctrine of *res judicata*.

ARGUMENT

A. Standard of Review

Summary judgment is appropriate only when the moving party is entitled to judgment as a matter of law and there are no disputes over material facts that may significantly affect the outcome of the suit. R.C.F.C. 56(c), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), *Croman Corp. v. United States*, 44 Fed. Cl. 796, 803 (1999). The party seeking summary

judgment bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether summary judgment should be granted, the court must resolve any doubts in favor of the non-moving party to whom all benefits of favorable inferences and presumptions run. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); *Croman Corp.*, 44 Fed. Cl. at 803.

The Government has not met its burden to establish that it is entitled to summary judgment.

B. The Court Did Not Have Jurisdiction in the Breach Case to Hear PCL's Claims for Equitable Adjustment

A critical omission in the Government's motion is its failure to recognize that where PCL's claims for equitable adjustment had not been presented to and decided by the contracting officer at the time PCL filed its Breach Complaint, the Court did not have subject matter jurisdiction to hear those claims. This fact alone is dispositive of the Government's motion.

The Government's position that *res judicata* bars the current action fails to take into account the significant differences between the way government contract, as opposed to other contract, claims are resolved and the scheme of review contemplated by the Contract Disputes Act ("CDA"), 41 U.S.C. § 601, *et seq.* Although in many breach of contract cases, all issues pertaining to a particular contract will arise out of the same "transactional facts," government contract claims are different. More than one suit arising out of the same contract is not only typical, but is expressly anticipated by the CDA. Section 609(d) provides:

> ***If two or more suits arising from one contract are filed in the United States Court of Federal Claims*** and one or more agency boards, for the convenience of parties or witnesses or in the interest of justice, the United States Court of Federal Claims may order the consolidation of such suits in that court or transfer any suits to or among the agency boards involved.

41 U.S.C. § 609(d) (emphasis added). *See also Kinetic Builder's Inc. v. Peters*, 226 F.3d 1307, 1312 (Fed. Cir. 2000) ("The CDA recognizes that a single government contract may give rise to more than one claim"); *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990) (government contract can give rise to more than one claim and contractor may pursue his rights "by filing two or more suits in either one or more fora").

This provision not only expressly recognizes that multiple suits may be brought arising out of a single contract, but recognizes that flexibility in adjudicating government contract claims is necessary. The Government's position that all claims relating to a single contract or project necessarily implicate the same transactional facts would mean that claim preclusion would always apply in a second suit arising out of the same contract and make the implementation of § 609(d) impossible.

In *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260 (Fed. Cir. 1999), the Court held that a contractor was not required to postpone seeking a ruling from the Court of Federal Claims until it had performed in full and sought compensation for the additional work:

> While the possibility of a multiplicity of actions and appeals for review of contract interpretation issues during the course of contract performance is a legitimate concern, [cite omitted] we believe that the requirement of the disputes clause that performance continue pending the final disposition of the litigation will have the effect of discouraging most requests for review during the pendency of the contract. In any event, as indicated, Congress has granted relatively free access to the boards of contract appeals and the Court of Federal Claims by authorizing review of final decisions of contracting officers on "any claim" by a contractor, 28 U.S.C. § 1491, and "any appeal" [from a contracting officer's decision on a claim] relative to a contract made by [an] agency, 41 U.S.C. § 607(d).

*Id.* at 1270-1271.

The Court further noted that the Federal Acquisition Regulations ("FAR") also ensure that review of contract claims would be relatively easy to obtain and stated that "if Congress or the FAR drafters decide that actions and appeals are too freely available for claims arising during

the performance of government contracts, they may make adjustments, by either statutory or regulatory change." *Id.* at 1271.

Section 605(a) of the CDA requires that "all claims by a contractor against the Government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). Claims that exceed $100,000 must be certified. 41 U.S.C. § 605(c)(1). Although the CDA does not itself define "claim," FAR defines a claim as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain . . . ." 48 C.F.R. § 33.201. *See also Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1573 (Fed. Cir. 1995); *Alliant Techsystems,* 178 F.3d at 1265. Although no prescription requires that a claim be submitted in any particular form or use any particular wording, the contractor must provide "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Manual Bros., Inc. v. United States*, 55 Fed. Cl. 8, 32 (2002); *ECC International Corp. v. United States*, 43 Fed. Cl. 359, 366 (1999); *Croman Corp.*, 44 Fed. Cl. at 801.

The CDA further provides that the "contracting officer's decision on the claim shall be final and conclusive and not subject to review by any forum, tribunal or Government agency, unless an appeal or suit is timely commenced as authorized by this chapter." 41 U.S.C. § 605(b). Once the contracting officer, however, has issued his or her final decision on a claim, the contractor has the choice to appeal that decision either to the appropriate board of contract appeals or to the Court of Federal Claims. 41 U.S.C. §§ 607(d), 609(a)(1); *Kiewit Construction Co. v. United States*, 56 Fed. Cl. 414, 419 (2003).

The Federal Circuit has interpreted § 605 of the CDA to impose two distinct prerequisites to the Court's jurisdiction over disputes between contractors and the government. First, the

contractor must have submitted a claim to the contracting officer. Second, the contracting officer must have issued a final decision on the claim. Both jurisdictional prerequisites must be established in order to proceed. *The Sharman Co. v. United States*, 2 F.3d 1564, 1568 (Fed. Cir. 1993); *Manual Bros.*, 55 Fed. Cl. at 32. *See also Kiewit Construction*, 56 Fed. Cl. at 419 (CDA waives immunity and gives court jurisdiction only where claim has first been submitted to contracting officer); *Johnson Controls World Services, Inc. v. United States*, 43 Fed. Cl. 589, 592 (1999) (valid decision by contracting officer is "jurisdictional prerequisite to further legal action"); *ECC International*, 43 Fed. Cl. at 365 (for court to have jurisdiction under the CDA, there must be both a valid claim and a contracting officer's final decision); *Renda Marine, Inc. v. United States*, 71 Fed. Cl. 378, 387 (2006) ("a party must establish both jurisdictional prerequisites to proceed in this court"). The determination of jurisdiction under the CDA is a question of law. *England v. The Swanson Group, Inc.*, 353 F.3d 1375, 1378 (Fed. Cir. 2004).

Moreover, it is well settled that any action brought in the Court of Federal Claims must be based on the same claim submitted to and decided by the contracting officer. *Cerberonics, Inc. v. United States*, 13 Cl. Ct. 415, 417 (1987). If the claim is not the same as that presented to and decided by the contracting officer, the jurisdictional requirements of the direct access provision of the CDA are not met. *Id.*; *Kiewit Construction*, 56 Fed. Cl. at 419.

In determining whether or not the claim is the same, the Court must evaluate whether or not the claim is based on essentially the same legal theory, seeks the same relief, and arises from the same set of operative facts as those presented to the contracting officer. *Manual Bros.*, 58 Fed. Cl. at 33; *Cerberonics*, 13 Cl. Ct. at 417; *Johnson Controls*, 43 Fed. Cl. at 594. A claim does *not* arise from the same set of operative facts if its adjudication by the Court would circumvent the statutory role of the contracting officer to first "receive and pass judgment" on

the claim. *Croman Corp.*, 44 Fed. Cl. at 801. In other words, there must be "meaningful review" by the relevant agency prior to submission to the Court. *Id. See also Cerberonics*, 13 Cl. Ct. at 418 (critical test is whether scheme of adjudication prescribed by CDA is undermined by contractor's claim on appeal by circumventing statutory role of contracting officer). Moreover, whether there is jurisdiction under the CDA must be determined "under the actual circumstances existing at the time the complaint is filed." *The Sharman Company*, 2 F.3d at 1569.

In *Reliance Insurance Co. v. United States*, 931 F.2d 863 (Fed. Cir. 1991), the contractor presented a claim to the contracting officer seeking an equitable adjustment. However, when the contractor brought suit, it changed its approach and alleged a breach of contract only. Relying on *Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586 (Fed. Cir. 1987), the Federal Circuit held that any claims that the government had breached the contract were not properly before the Court. Because the contractor had only submitted claims for equitable adjustment to the contracting officer and had not submitted a "clear and unequivocal claim" that the government had breached the contract, the Court held that the contractor had not satisfied 41 U.S.C. § 605(a). 931 F.2d at 866. Accordingly, because the government had not waived its sovereign immunity with respect to any breach claims, the Claims Court and the Federal Circuit lacked jurisdiction to consider such claims. *Id.*

In *Manual Bros., Inc. v. United States*, 55 Fed. Cl. (2002), this Court was asked to determine whether it had jurisdiction to hear a breach of contract claim based on the government's alleged superior knowledge of expansive soils present on the project. In *Manual Bros.*, the government had alleged that because the plaintiff had never presented a breach of contract claim to the contracting officer that was specifically based on the government's superior

knowledge of the characteristics of the soils, the Court lacked jurisdiction. Applying the required test, the Court looked to whether the claim was based on the same, common or related set of operative facts presented to the contracting officer, whether the legal theory underlying the claim was the same as that presented to the contracting officer, and whether the complaint requested the same relief as that requested from the contracting officer. *Id.* at 32-33. In *Manual Bros.*, unlike here, both claims asserted a breach of contract, requested the very same relief, and arose out of the same set of operative facts. Accordingly, the Court found that the plaintiff had merely "augmented or changed the nomenclature of its claim," and that the Court, therefore, had jurisdiction. *Id.* at 34.

In the recent opinion issued in *Renda Marine, Inc. v. United States*, 71 Fed. Cl. 378 (2006), this Court held that it lacked jurisdiction to consider the merits of the plaintiff's claim that the government breached its implied duty to cooperate.[4] In *Renda Marine*, the Court found that plaintiff's equitable adjustment claim for Type I differing site conditions that had been submitted to the contracting officer and its claim that the government breached its implied duty to cooperate were not the same. *Id.* at 389. The Court said:

> The operative facts necessary to support a differing site conditions claim for equitable adjustment do not also support a claim that the government breached its implied duty to cooperate.

*Id.* at 390.

The Court, however, did not rely solely on the difference in operative facts to conclude that it lacked jurisdiction over the plaintiff's breach claim. It also looked to the legal theories alleged in the two claims. Relying on the Federal Circuit's decision in *Reliance Insurance Co.*, discussed above, the Court concluded that the plaintiff's differing site conditions claim and its

---

[4] In *Renda Marine*, the Court itself identified the jurisdictional bar, which had not been raised by either of the parties. *Id.* at 385.

claim that the government breached its implied duty to cooperate relied "on sufficiently distinct legal theories to defeat the court's jurisdiction over the latter claim." *Id.* at 392. The Court said:

> Here, as in *Reliance*, plaintiff "only submitted to the contracting officer claims for equitable adjustment to the contract," and "did not submit to the contracting officer a clear and unequivocal claim that [defendant] breached the contract or its duty of good faith." [Cites omitted.] When plaintiff submitted its REA, the CO was not put on notice of a breach of contract claim or a claim for breach of the duty of good faith, both of which are implicated in a claim for the breach of the implied duty to cooperate. A differing site condition claim is not a "slightly different legal theor[y]" from a claim that the government has breached its implied duty to cooperate under the contract. [Cites omitted.] Each claim involves entirely distinct requisite elements of proof, determinations of law, potential defenses and/or counterclaims, and underlying policy rationales. Accordingly, plaintiff has not satisfied 41 U.S.C. § 605(a) and the government has not waived its sovereign immunity to be sued for a breach of its implied duty to cooperate.

*Id.*

Here, PCL's equitable adjustment claims are not based on the same legal theories, do not seek the same relief, and arise from a distinct set of operative facts from those offered in support of its Breach Claim. It cannot be disputed that PCL's first claim rested on two theories: breach of contract and violation of the Anti-Deficiency Act. PCL did *not* seek any relief under the remedy granting provisions of the Contract. Because of this, neither the contracting officer nor the Court reviewed or issued a decision on PCL's claims for equitable adjustment – a fact that both the contracting officer and the Government's trial counsel have freely acknowledged.

In the contracting officer's final decision denying PCL's certified Breach Claim, she confirmed her understanding that PCL's claim was limited to breach of contract, or in the alternative, for damages resulting from an illegal and void contract:

> PCL has asserted two theories for relief in its Claim: (A) that the Bureau has breached the contract with PCL by (1) misrepresentation and fraud in the inducement of the contract, (2) hindrance of PCL's performance of the contract, and (3) effecting a cardinal change to the contract; and (B) the Bureau has violated the Anti-Deficiency Act rendering the contract illegal and void.

Final Decision, Appendix 5, p. 2. The contracting officer further confirmed that in evaluating the claim, she viewed the claim as "an all or nothing claim" and that her review, therefore, was limited *solely* to breach of contract and void contract theories. *See id.* ("Accordingly, we have evaluated the Claim based ***solely*** on the breach of contract and void contract theories") (emphasis added).

At the close of the trial of the Breach Claim, the Government's counsel also acknowledged that, although PCL had reserved its right to bring a claim for equitable adjustment,[5] because PCL had never presented a certified equitable adjustment claim to the contracting officer, the claim was not properly before the Court. The following dialogue took place between the Court and the Government's counsel:

> THE COURT: And you're taking the position that despite all of the back and forth with the contracting officers in this case, including the good, the bad, and the ugly, that this equitable adjustment claim was never presented to the contracting officer or was simply never properly offered in this particular case, because they're different?
>
> MR. SMITH: ***No equitable adjustment claim was ever presented to the contracting officer as a certified claim, which is the gate through which they must pass to get to this Court.*** There is a certified claim, but it is a breach of contract claim.
>
> THE COURT: So the only certified claim you're saying that was presented to the contracting officer was for breach of contract?
>
> MR. SMITH: Yes. And we cite that in our brief. And the exhibit itself, that is their certified claim, certainly the cover letter is very easy for you to read, for you to pass on that issue too. There was no middle ground in that claim. ***They did not present an alternative basis as an equitable adjustment.*** And you heard PCL's witnesses tell you we were pursuing breach here.

[5] During closing arguments, when asked by the Court what the impact of the release language was, the Government's counsel said: "The impact of this release language is that they [PCL] are releasing everything but an equitable adjustment for the time and cost impacts or extended overhead for impacts for unchanged work and for any contribution towards cumulative impact of all changes on the critical path of project schedule . . . . They did not release the right to present an equitable adjustment delay claim." *See* Trial Transcript, Appendix 7, pp. 12978:14-12979:3.

* * *

> MR. SMITH: Yeah. I mean, I'm not shying away from the contents of the entire claim itself. ***The only thing ever certified to the contracting officer was*** – I don't think the word total was in there – is the ***breach of contract.***

Trial Transcript, Appendix 7, pp. 12995:17-12997:12 (emphasis added).[6]

The Government's counsel was also adamant that PCL's certified Breach Claim did not include or implicate delays or disruptions. During his opening statement, he said:

> This is a breach of contract claim. It is not a claim for extended overhead, impacts of unchanged work and any contribution toward cumulative impact of all changes on the critical path of the project schedule.

*Id.*, p. 58:10-13. Similarly, in his closing argument, the Government's counsel said:

> Frankly, legally I don't think it's possible to take the evidence in this case and arrive at a liability determination for equitable adjustment. Not only was it not pled that way, it was not presented that way either. PCL didn't try to show you we're liable for an equitable adjustment for the ped ramp or for the triangular bridge, and certainly not for a lot of the other things . . . . And nobody's presented any evidence about whose fault that was or anything whereby you can determine any type of liability for an equitable adjustment.

*Id.*, pp. 12999:15-13000:7.[7]

As aptly put by the Government, where no equitable adjustment claim was presented to or decided by the contracting officer in connection with the Breach Claim, PCL never passed through "the gate through which [it] must pass to get to this Court." The undisputed conclusion that this Court did not have subject matter jurisdiction over an equitable adjustment claim at the time of the breach trial is dispositive of the Government's motion.

---

[6] Mr. Smith later said: "Our position is the only certified claim – which is the gate we must walk through to get to this Court – that was presented to the CO as a breach of contract claim. And no matter how you try to read it, there was no equitable adjustment claim there." *Id.* at 12999.

[7] Later, counsel reiterated these remarks: "I don't think you can legally find an equitable adjustment here. A, because it was never presented. B, Because the evidence of it was never offered. Certainly not in a way that is competent for you to make an intelligent equitable adjustment ruling. You simply haven't been given the tools to do that." *Id.*, p. 13003:10-22.

C. PCL's Complaint Is Not Barred By the Doctrine of *Res Judicata*

The doctrine of *res judicata*, also known as claim preclusion, provides that a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. *Jet, Inc. v. Sewage Aeration Systems*, 223 F.3d 1360, 1362 (Fed. Cir. 2000); *Bailey v. United States*, 54 Fed. Cl. 459, 474 (2002); *Mosely v. United States*, 15 Cl. Ct. 193, 194 (1988). *See also Restatement (Second) of Judgments* § 24(1). Whether *res judicata* operates to bar a subsequent action is a question of law. *Phoenix Petroleum Co. v. United States*, 1999 U.S. App. Lexis 16939 (Fed. Cir. 1999); *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003).

Claim preclusion is a judicially-created tool that protects parties from duplicative litigation. *Smith v. United States*, 59 Fed. Cl. 64 (2003); *Super Van, Inc. v. City of San Antonio*, 92 F.3d 366, 371 (5th Cir. 1996). However, in order for a second suit to be barred, the moving party must prove (1) an identity of parties, (2) the existence of an earlier final judgment on the merits of a claim, and (3) that the second claim is based on the same set of transactional facts as the first. *Jet, Inc*, 223 F.3d at 1362; *Ammex,* 334 F.3d at 1055; *Bailey*, 54 Fed. Cl. at 474. In analyzing whether *res judicata* applies, the Federal Circuit looks to the *Restatement (Second) of Judgments*. *The Young Engineers v. United States International Trade Commission*, 721 F.2d 1305, 1314 (Fed. Cir. 1983); *Jet*, 223 F.3d at 1363; *Bailey,* 54 Fed. Cl. at 476.

The doctrine of *res judicata* also provides as a prerequisite that a "full and fair opportunity to litigate" the claims has occurred. *Bailey*, 54 Fed. Cl. at 474; *Clements v. Airport Authority of Washoe County*, 69 F.3d 321, 328 (9th Cir. 1995). The party asserting the defense of *res judicata* has the burden of showing with "clarity and certainty what was determined by the prior judgment." *Torres v. Rebarchak,* 814 F.2d 1219, 1222 (7th Cir. 1987). Moreover, any

doubt as to what was decided in the earlier action "must be resolved against an application of *res judicata*." *Id.*

Here, PCL's current claims for equitable adjustment are distinct from the claims litigated in the prior breach trial and do not arise out of the same set of transactional facts. Nor did PCL have a "full and fair opportunity to litigate" its claims for equitable adjustment in the breach trial because this Court did not have jurisdiction over them. Accordingly, *res judicata* does not apply.

Moreover, § 26(1) of the *Restatement (Second) of Judgments* also recognizes several exceptions. Two of those exceptions are relevant here:

> § 26. Exceptions to the General Rule Concerning Splitting
>
> (1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:
>
> (a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or
>
> (b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action; or

*Restatement (Second) Judgments* § 26(1)(a) and (b). Thus, even if the Court were to find that the three-part test for claim preclusion had been met, either exception would require that the Government's motion be denied.

D. <u>PCL's Current Claims Do Not Arise Out of the Same Transactional Facts Upon Which PCL's Breach Claim Was Based</u>

As discussed above, *res judicata* applies only if the second claim is based on the same set of transactional facts as the first. *Jet, Inc.*, 223 F.3d at 1362; *Ammex*, 334 F.3d at 1055; *Bailey*, 54 Fed. Cl. at 474.

Section 24(2) of the *Restatement (Second) of Judgments* provides that the common set of "transactional facts" be identified "pragmatically." *See also The Young Engineers*, 721 F.2d at

1314; *Ammex*, 334 F.3d at 1056; *Land Grantors in Henderson, Union and Webster Counties, Ky. v. United States*, 64 Fed. Cl. 661, 710 (2005). Seeking to add additional clarity to this standard, courts have defined "transaction" in terms of a "core of operative facts," the "same operative facts," or the "same nucleus of operative facts," and "based on the same or nearly the same factual allegations." *Jet*, 223 F.3d at 1363; *Ammex*, 334 F.3d at 1056; *Land Grantors*, 64 Fed. Cl. at 710.[8]

Looking at the transactional facts "pragmatically," as the *Restatement (Second) of Judgments* demands, it is clear that where PCL's first action alleged that the Government had materially breached the Contract, the facts upon which the Breach Claim was grounded are wholly distinct from the facts on which PCL's current claims are based, which seek recovery under the remedy granting provisions of the Contract.

PCL's certified CRX Claim relates to specific Change Request Extras (CRXs), which remain outstanding and unresolved. Many of these CRXs remain outstanding because the USBR simply stopped performing the contract administration required to process CRXs after PCL filed its certified Breach Claim. Normal CRX processing came to a halt and, as a result, many CRXs have never been administratively processed to completion. The CRX claims are composed of the following:

(a) <u>Unilateral modifications – billable</u>. Eight (8) CRXs were unilaterally issued by the USBR. PCL was authorized to and did bill for the CRXs, but the USBR has not paid the full amount due.

---

[8] *See also United States v. Haytian Republic*, 154 U.S. 118, 125 (1894) ("one of the tests laid down for the purpose of determining whether or not the causes of action should have been joined in one suit is whether the evidence necessary to prove one cause of action would establish the other").

(b) Unilateral modifications – not billable. Four (4) CRXs involve unilateral modifications that were issued by the USBR. PCL was given a not-to-exceed price for the modification, but the USBR never issued documents which would allow PCL to bill for the modification.

(c) Merit Acknowledged. Forty-four (44) CRXs were acknowledged by the USBR to be justified, thereby acknowledging that a change existed, but the USBR disagreed with the pricing for the CRX provided by PCL.

(d) Disputed. Forty-five (45) CRXs were disputed. The USBR denied that PCL was entitled to any amounts for the CRX.

All of the CRXs included in the CRX Claim seek recovery for discrete, direct costs associated with a specific scope change and item of work. The CRXs remain unresolved because they have either not been completely processed because the USBR simply stopped processing CRXs, or a dispute exists about entitlement or pricing between PCL and the USBR regarding the specific CRX. PCL's certified Breach Claim did not include or seek resolution of any of these CRXs. The operative facts concerning whether or not PCL is entitled to compensation for each CRX at issue turns on very specific entitlement and pricing issues relating to each individual CRX. The allegations of material misrepresentation, fraudulent inducement, superior knowledge, breach of the duty not to hinder or delay, and cardinal change that formed the basis for PCL's Breach Claim have no relevancy or relationship to these individual CRXs.

PCL's D&D claim involves a classic windows Critical Path Management (CPM) delay analysis of the delays caused by the Government on the project, albeit not in strict accordance with the contract documents. As referenced in the Government's Motion for Summary Judgment, p. 8, and as numerous PCL's witnesses testified, the uncertainty concerning when

design delays would be resolved made it impossible for PCL to comply with the Contract's requirement that a contemporaneous TIE analysis be performed at the time the delay occurred. Moreover, the number and nature of the delays being encountered made compliance with that requirement impracticable during construction. Finally, the USBR's failure to respond to the first TIE analysis presented by PCL made it impossible for PCL to prepare additional TIE analyses, because each such analysis relied on the previous updated analysis, which required approval from the USBR. For all of these reasons, PCL could not strictly comply with the letter of the requirements contained in the contract documents.

The detailed time impact schedule analysis contained in PCL's D&D claim uses the actual delay durations to determine actual impact. In other words, PCL's D&D claim uses the best evidence now available to perform a delay analysis of the project. Eleven separate time frames, or windows, were analyzed, and the delays caused by the USBR and/or PCL during each window were calculated. Again, that analysis has nothing whatsoever to do with allegations of material misrepresentation, fraudulent inducement, superior knowledge, hindrance or cardinal change. Rather, it represents a classic delay and disruption schedule analysis pursuant to remedy granting clauses of the Contract. It is clearly and expressly premised on the changes, suspension of work and differing site conditions provisions of the Contract. It follows that PCL's CRX and D&D claims involve very different "operative facts" and evidence from the Breach Claim previously litigated.

E. <u>The Court Expressly Reserved Decision on PCL's Claims for Equitable Adjustment</u>

The *Restatement (Second) of Judgments* § 26(1)(b) sets forth an exception to *res judicata* where a court withholds or reserves the claim. *See also Torres*, 814 F.2d at 1225 (a court may dispose of a segment of litigation and render judgment thereon while reserving the remaining issues for trial at a later time); *Washington Public Power Supply System v. Pittsburg-Des Moines*

*Corp.*, 876 F.2d 690, 699 (9th Cir. 1989) (when a court reserves a question for further adjudication, a judgment does not bar subsequent determination of that question); *Dodd v. Hood River County*, 59 F.3d 852, 862 (9th Cir. 1995) (there is no claim preclusion where court reserved issue for later determination).

The Government's suggestion that the Court did not reserve PCL's right to later bring claims for equitable adjustment is not supported by the record. Nor does the law support the Government's novel position that the Court only has the authority to reserve claims for later decision if the plaintiff expressly requests it. *See* Motion, p. 18 ("that is, in the absence of a reservation of the right to split its claims (an event that clearly never occurred), neither the Government nor the Court could create such a reservation for PCL . . ."). Similarly, there is no authority, and the Government cites to none, for its statement that a reservation would have to take the form of a "formal agreement, pleading, document, or, at the very least, a motion to the court." *See id.* Although in its motion, the Government cites to several cases in which a reservation was contained in a consent order, the rule is not so limited. *See Restatement (Second) of Judgments* § 26(1)(b). But even if there were a requirement that the reservation be contained in a formal document, that requirement is satisfied here.

In PCL I, in discussing the testimony of the Government's expert, the Court said:

> In other words, the testimony at trial of fact witnesses buttressed the analysis and conclusions of the defendant's expert report; however, the absolute conclusions are not adopted by the court and ***are reserved for any claim that PCL may elect to bring for a delay claim***.

47 Fed. Cl. at 802, n. 48 (emphasis added). This explicit reservation was restated verbatim in PCL II. 53 Fed. Cl. at 491.

This is the exact type of express reservation contemplated by the *Restatement (Second) of Judgments* § 26(1)(b), and the Government's assertion that the Court did not reserve PCL's right to bring a separate claim for equitable adjustment is simply wrong.

F. The Government Tacitly Agreed or Acquiesced in PCL Bringing More Than One Claim

It is also well established that where a defendant has agreed in terms or in effect that the plaintiff may split its claim or has acquiesced in the splitting, *res judicata* does not bar a second suit. *See Restatement (Second) of Judgments*, § 26(1)(a).

Because one of the main purposes behind the rule preventing splitting a claim is to protect a defendant from being subjected to repetitive actions based on the same claim, where a defendant has agreed either expressly or tacitly or has acquiesced in the splitting of the claim, there is no purpose served by the rule. *Torres*, 814 F.2d at 1226 (defendant may waive the rule against claim splitting since the rule is for its benefit); *Rosado v. General Electric Circuit Breakers, Inc.*, 805 F.2d 1085, 1087 (1st Cir. 1986) (benefit afforded defendant by rule against claim splitting may be waived). As noted by the *Restatement* commentators:

> *a. Consent to or acquiescence in splitting (Subsection (1)(a)).* A main purpose of the general rule stated in § 24 is to protect the defendant from being harassed by repetitive actions based on the same claim. The rule is thus not applicable where the defendant consents, in express words or otherwise, to the splitting of the claim . . . .

*Restatement (Second) of Judgments*, § 26 comment a.

Because the course of litigation is determined for the most part by the actions of the litigants, where the parties have agreed to split a claim, or the defendant has acquiesced, the defendant may not invoke claim preclusion. *Doctor's Exchange of South Carolina, P.C. v. America's Best Contacts and Eyeglasses, Inc.*, 2002 U.S. App. Lexis 592, **15 (4th Cir. 2002). A contrary rule imposing *res judicata,* despite the fact that the defendant agreed or acquiesced in the splitting of the claim, "would encourage litigants to engage in dishonest (or at least less than

forthright) behavior to gain tactical advantage." *Super Van,* 92 F.3d at 371; *Aguirre v. Albertson's, Inc.*, 117 P.3d 1012, 1023-24 (Ore. App. 2005). Accordingly, there is no reason to allow litigants to delay objecting to separate proceedings until they receive a favorable judgment in one of them, because permitting such conduct "could only encourage mischief." *Id., citing Rotec Industries, Inc. v. Mitsubishi Corp.*, 348 F.3d 1116, 1119 (9th Cir. 2003).

The Government's position that it did not consent to or acquiesce in PCL subsequently certifying an equitable adjustment claim is not supported by the record. Throughout these proceedings, the Government not only acquiesced in PCL bringing a later claim for equitable adjustment, but actively encouraged it. Indeed, the Government argued that the Court should rule in its favor on the Breach Claim because PCL could still bring a contract-based delay and disruption claim. The Government did not merely consent, it affirmatively sought to gain an advantage in the breach trial by repeatedly making the offer on which it has now reneged. The Government's attempt to dismiss its numerous statements acknowledging PCL's right to subsequently pursue a delay and disruption claim, both in correspondence and before this Court, as mere "colloquial statements regarding hypothetical-future claims by PCL"[9] is disingenuous.

At the conclusion of the trial of the Breach Claim, the Government encouraged PCL to submit a claim for equitable adjustment under the remedy granting provisions of the Contract and acknowledged that PCL had properly preserved its right to bring such a claim when it executed the contract changes that were resolved in bilateral Contract Modifications. In a letter, dated May 27, 1999, the Government's counsel stated:

> For approximately six years, even prior to PCL's initiation of its breach of contract case, the Government has been proposing that PCL's only legitimate avenue for any potential additional compensation is not via a breach of contract claim, but via a detailed schedule and cost analysis to support an equitable

[9] *See* Motion, p. 1.

> adjustment claim/s – which is the only type of claim that PCL preserved when the vast majority of the contract changes were resolved in bilateral modifications.

*See* letter from Smith to Fenster, Appendix 9, p. 1. Moreover, the Government was clear that it would be willing to entertain a later claim for equitable adjustment in the event the Court ruled in the Government's favor in the breach trial, which, of course, is precisely what happened:

> [W]e will not engage in discussions with PCL unless and until PCL dismisses its breach of contract case with prejudice and submits a certified equitable adjustment claim for delay/impacts, ***or the Court enters judgment in favor of the Government on all counts of PCL's breach of contract case and PCL submits a certified equitable adjustment claim for delay/impacts.***

*See id.*, p. 2 (emphasis added).

During closing arguments at the breach trial, the Government further acknowledged PCL's express claim reservations for delays, disruptions and other impacts based on the USBR's conduct during the performance of the Contract. Noting the significance of the reservation clauses included in the change orders, counsel said:

> The impact of this release language is that they [PCL] are releasing everything but an equitable adjustment for the time and cost impacts or extended overhead for impacts on unchanged work and for any contribution towards cumulative impact of all changes on the critical path of project schedule.

Trial Transcript, Appendix 7, p. 12978:14-20. Counsel also expressed the Government's view that PCL had properly reserved its rights to bring a subsequent claim under the Contract, stating: "[PCL] did not release the right to present an equitable adjustment delay claim." *Id.*, p. 12979:2-3.

Moreover, during a discussion with the Court during his closing argument, the Government's counsel shared with the Court what he thought the next step would be if the Court found in the Government's favor. In the event that the Court found no global breach, he said:

> ***Then PCL will be free to go off and make an equitable adjustment claim if it wants to.*** The contracting officer will get an opportunity to pass on it, as it has never been provided. And if the parties do not resolve them at that level, it will proceed just like a normal case. ***And maybe or maybe not you and I will see***

> ***each other again litigating an equitable adjustment claim for delay. But that is the effect of what happens if you find no breach.***

*Id.*, p. 12995:7-16 (emphasis added). He further affirmed the Government's commitment that ***"[w]e, the Bureau,*** are ready, and the contracting officer has always been and ***continues to be ready to adjudicate an equitable adjustment claim,"*** *id.*, pp. 13002:25-13003:2 (emphasis added), and suggested that the "speediest [resolution] would be to have PCL certify a legitimate delay claim, and then we'll sit down and chat." *Id.*, p. 13037:4-6.

The Government's position that it did not acquiesce in any splitting of PCL's claims is also not supported by the law. The pinched reading that the Government imposes on the exception contained in the *Restatement (Second) of Judgments* § 26(1)(a) finds no support in the cases. The law is clear that a formal agreement based on offer and acceptance is not necessary to satisfy the exception. Indeed, consent may be established in various ways.

In *Pueschel v. United States*, 369 F.3d 345 (4th Cir. 2004), the Court found that the FAA consented to the plaintiff's splitting of her disability claim filed with the Office of Worker's Compensation Programs ("OWCP") from the claims she asserted in a suit under Title VII of the Civil Rights Act of 1964. In a motion for summary judgment, the FAA had stated that Pueschel's OWCP claim was "being investigated and [thus] not part of [the present] lawsuit." *Id.* at 356. The Court found that "by making this representation, the FAA had in effect consented to the splitting of Pueschel's OWCP claim from her 1997 Title VII action." *See id.*

In *Bankruptcy Estate of Lake Geneva Sugar Shack, Inc. v. General Star Indemnity Co.*, 200 F.3d 479 (7th Cir. 2000), the defendant moved to dismiss a second suit for bad faith brought in federal court on the ground of *res judicata*. The Court denied the motion, stating that "it can hardly be disputed that everyone assumed all along that the bad faith claim would proceed in federal court after the trial was completed on the other issues pending in state court." *Id.* at 483.

Moreover, the Court specifically noted that "on more than one occasion, GenStar specifically acknowledged that the federal case could proceed after the state case was over." *Id.* In a statement that is particularly relevant here, the Court said: "The record shows that GenStar clearly acquiesced in and in fact encouraged – the splitting of [plaintiff's] claim." *Id.* at 485.[10]

Notably, in this case PCL is proceeding exactly as the Government envisioned and represented to the Court. The policy of the exception stated in the *Restatement (Second) of Judgments* § 26(1)(a) is fully applicable here. To allow the Government to lure both PCL and the Court into believing that it had no objection to, and in fact would welcome, a later claim for equitable adjustment in the event the Court declined to find a breach of contract, is exactly the type of "less than forthright" behavior that the exception is designed to prevent. To permit the Government to ignore its prior representations to PCL and to the Court should not be tolerated, for it can only "encourage mischief." Indeed, here "mischief appears to abound." *See Aguirre*, 117 P.3d at 1027.

G. The Doctrine of Collateral Estoppel, or Issue Preclusion, May Affect Only Very Specific Facts Relating to PCL's Claims

In a footnote, the Government weakly asserts that, although its motion is based on *res judicata*, the doctrine of collateral estoppel or issue preclusion also bars PCL's claims. *See* Motion, p. 14, n. 10.

The Court of Federal Claims has adopted the test used by the United States Court of Appeals for the Federal Circuit in determining issue preclusion: "(1) the issues are identical to

[10] The cases are also clear that a defendant can acquiesce in the splitting of a claim by mere silence or inaction, such as when a plaintiff files two actions and the defendant fails to object. *See, e.g., Dodd*, 59 F.3d at 862; *Rosado*, 805 F.2d at 1087; *see also Restatement (Second) of Judgments* § 26, comment a (where plaintiff is simultaneously maintaining separate actions based on parts of same claim and defendant does not object in either action, such failure to object is effective as an acquiescence in the splitting of the claim).

those in the prior proceeding, (2) the issues were actually litigated, (3) the determination of the issues was necessary to the resulting judgment, and (4) the party defending against preclusion had a full and fair opportunity to litigate the issues." *Franklin Sav. Corp. v. United States*, 56 Fed. Cl. 720, 736 (2003), quoting *Banner v. United States*, 238 F.3d 1348 (Fed. Cir. 2001).

The determination of whether two issues are identical requires an examination of several factors. Section 27 of the *Restatement (Second) of Judgments* guides the analysis and provides in relevant part:

> (1) whether there is a substantial overlap between the evidence or argument to be advanced in the second proceeding than that advanced in the first;
>
> (2) whether pretrial preparation and discovery related to the matter presented in the first action could reasonably be expected to have embraced the matter sought to be presented in the second; and
>
> (3) whether the claims involved in the two proceedings are closely related.

*Id.* at 736-37, quoting *Restatement (Second) of Judgments*, § 27 comment c.

Notably, in its motion, the Government makes no attempt to identify the specific "issues" that it claims are subject to the doctrine or to engage in the fact specific, detailed analysis of PCL's claims and the impact previous specific factual findings might have on those claims. Rather, it simply asserts in a conclusory fashion that the doctrine applies.

Moreover, in preparing its CRX and D&D claims, PCL attempted to take into account specific adverse factual findings made by the Court on the Breach Claim. This is because PCL acknowledges that to the extent the Court made a specific and detailed adverse factual finding regarding an individual event, action, delay or CRX, PCL may be bound by such finding. [11] That acknowledgement, however, is very different from the Government's conclusory, unsubstantiated and incorrect statement that collateral estoppel bars PCL's claims in this matter.

---

[11] The same, of course, holds true for the Government.

## CONCLUSION

For the reasons set forth above, PCL respectfully requests that the Court deny the Government's Motion for Summary Judgment.

Respectfully submitted this 15th day of December, 2006.

SHERMAN & HOWARD, L.L.C.

By: s/ Durward E. Timmons
Durward E.Timmons

90 S. Cascade Avenue
Suite 1500
Colorado Springs, CO 80903-4015
Phone Number: (719) 475-2440
Facsimile: (719) 635-4576

Attorneys for Plaintiff PCL Construction Services, Inc.

OF COUNSEL:

Michael J. Cook
633 17th Street, Suite 3000
Denver, CO 80202
Phone Number: (303) 297-2900
Facsimile: (303) 298-0940

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of December, 2006, a true and correct copy of the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Service is complete upon filing and parties may access this filing through the Court's system.

Peter D. Kiesler, Assistant Attorney General
David M. Cohen, Director
Deborah A. Bynum, Assistant Director
Brian S. Smith, Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
Attention: Classification Unit – 8th Floor
1100 L Street N.W.
Washington, D.C. 20530

s/ Durward E. Timmons