IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PCL CONSTRUCTION SERVICES, INC. | ) | |
| Plaintiff, | ) | Case No. 06-144C |
| v. | ) | Judge Horn |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

PCL Construction Services, Inc. ("PCL"), by and through its attorneys, Sherman & Howard, L.L.C., respectfully submits its response to Defendant's Proposed Findings of Uncontroverted Fact in Support of its Motion for Summary Judgment ("Response"). PCL's Response is based upon the following: (1) documentary evidence attached to PCL's Response to Defendant's Motion for Summary Judgment as Appendices 1 through 13, (2) the Complaint PCL filed in this action on February 23, 2006 ("Delay Complaint"), (3) the Court's opinion in *PCL Construction Services, Inc. v. United States*, 47 Fed. Cl. 745 (2000) ("*PCL I*"), (4) the Court's opinion in *PCL Construction Services, Inc. v. United States*, 53 Fed. Cl. 478 (2002) ("*PCL II*"), and (5) the United States Court of Appeals for the Federal Circuit's opinion in *PCL Construction Services, Inc. v. United States*, 96 Fed. Appx. 672, 2004 WL 842984 (Fed. Cir. 2004).

1. In the mid-1990s, plaintiff PCL Construction Services, Inc., ("PCL") partially performed a construction contract for the United States Bureau of Reclamation ("Reclamation") whereby PCL constructed the Hoover Dam Visitor Center and parking structure. PCL

Construction Services, Inc. v. United States, 47 Fed. Cl. 745, 753-82 (2000) (hereinafter "PCL").

**RESPONSE:** PCL refers to the United States Bureau of Reclamation as "USBR," to *PCL Construction Services, Inc. v. United States*, 47 Fed. Cl. 745 (2000) as "*PCL I*," and to Defendant United States as "the Government."

PCL objects to the Government's assertion that PCL "partially performed" the contract with USBR because it mischaracterizes the total extent of PCL's performance of the contract. As noted in *PCL I,* USBR's contracting officer issued a Certificate of Substantial Completion to PCL, certifying that the contract was substantially complete as of May 11, 1995. *PCL I* at 780. Use of the phrase "partially performed" suggests that PCL performed work less than substantial completion. PCL proposes that the language in Proposed Finding No. 1 follow the Court's language in *PCL I* as follows:

> In September 1991, the United States Bureau of Reclamation ("USBR") awarded a contract to PCL for the construction of the Parking Structure and Visitor Center at the Hoover Dam. ("Contract"). *PCL Construction Services, Inc. v. United States*, 47 Fed. Cl. 745, 757 (2000) ("*PCL I*"). The Contract called for PCL to construct a Parking Structure, Visitor Center, and other related facilities. *Id.* at 756-57.

2. Near the conclusion of the project, PCL refused to perform further and was duly terminated for default. PCL's challenge to the default termination was rejected by this Court, and PCL did not appeal that aspect of the Court's decision. PCL at 811.

**RESPONSE:** PCL objects to the Government's characterization of PCL's decision on November 22, 1995 to perform no additional work under the Contact. PCL also does not believe that Proposed Finding No. 2 is necessary to resolving the Government's Motion for Summary Judgment. Finally, Proposed Finding No. 2 is addressed, and more appropriately located, in the

Revision to Proposed Finding No. 22. Accordingly, PCL proposes that Proposed Finding No. 2 be deleted.

3. After its partial performance, PCL claimed that it believed that Reclamation imposed excessive contract changes upon PCL (PCL First Amended Complaint in Case No. 95-666C ("breach complaint") ¶¶ 144, 154-155; PCL Complaint in Case No. 06-144C ("delay complaint") ¶¶ 71), that the contract plans and specifications were "defective" (breach complaint ¶¶ 8, 117, 121, 122, 124, 132-136, 139-140, 143, 147-148, 212, 218, 288; delay complaint ¶¶ 43-44, 46, 48, 52) which disrupted and delayed PCL's contract performance (breach complaint ¶¶ 132-134, 290, 292-296; delay complaint ¶¶ 51-52, 57-58, 68), and that Reclamation otherwise "maladministered" PCL's contract. Breach complaint ¶¶ 149-164, 170, 173, 288-296; delay complaint ¶¶ 48-58, 67-68, 71, 79-80.

**RESPONSE**: PCL refers to its First Amended Complaint filed on July 23, 1996 as the "Breach Complaint." Breach Complaint, Appendix 6. PCL refers to its Complaint filed on February 23, 2006 as the "Delay Complaint."

PCL objects to the Government's characterization of PCL's decision on November 22, 1995 to perform no additional work, as noted in PCL's Response to Proposed Finding No. 2. Furthermore, PCL objects to Proposed Finding No. 3 for the following reasons:

a. Breach Complaint ¶¶ 154-55 state that USBR issued 130 Contract modifications and Delay Complaint ¶ 71 states that USBR issued more than 140 Contract modifications. They do not support other assertions in Proposed Finding No. 2.

b. Breach Complaint ¶¶ 291-96 and Delay Complaint ¶¶ 57-58, 68 do not discuss how the defective Contract drawings and specifications delayed and disrupted PCL.

c. Breach Complaint ¶¶ 163-64 and Delay Complaint ¶ 71 do not discuss how USBR "maladministered" the Contract.

Based upon PCL's objections, it proposes the following revision to Proposed Finding No. 3:

> During performance of the Contract, PCL asserts that it encountered numerous unanticipated difficulties including, but not limited to, differing site conditions, incomplete and inaccurate Contract drawings and specifications, delays in receiving direction and response from USBR to numerous Requests for Information ("RFI"), delays in receiving USBR responses to PCL's submittals, and delays in receiving change orders and other Contract modifications. Delay Complaint ¶ 13.

4. PCL depicted the alleged "perturbation" it experienced with RFI's, "CRXs" (instances where PCL believed it was entitled to extra compensation for contract changes), and other contemporaneous written correspondence but, notably, did not provide a single complete contractually-required time-impact evaluation for any of its alleged construction difficulties. PCL at 745, 759, 761-764, 766, 768, 771, 773-774, 779, 812; breach complaint ¶¶ 144, 150-153; delay complaint ¶¶ 46, 58, 60-68, 72-80.

**RESPONSE:** PCL objects to the Government's use of the word "perturbation." Webster's New World Collegiate Dictionary defines "perturbation" as "a perturbing or being perturbed; something that perturbs; disturbance." WEBSTER'S NEW WORLD COLLEGIATE DICTIONARY 1009 (3d ed. 1996). It defines "perturb" as "to cause to be alarmed, agitated, or upset; disturb or trouble greatly." *Id.* Since PCL believes that "perturbation" does not accurately describe what PCL experienced during Contract performance, it proposes that the Parties use the word "difficulty." PCL also objects to Proposed Finding No. 4 for the following reasons:

a. The citations to *PCL I* at 745, 812 do not support the assertions in Proposed Finding No. 4.

b. Breach Complaint ¶ 144 states that there were an excessive number of Contract modifications and RFIs. It supports no other assertions in Proposed Finding No. 4.

c. Breach Complaint ¶¶ 150-153 discusses PCL's use of RFIs to identify difficulties experienced during PCL's Contract performance. They support no other assertions in Proposed Finding No. 4.

d. Delay Complaint ¶ 46 states that PCL submitted 1,255 RFIs during Contract performance. It supports no other assertions in Proposed Finding No. 4.

e. Delay Complaint ¶ 58 states that USBR unreasonably delayed PCL by failing to provide timely direction to PCL through the RFI process. It supports no other assertions in Proposed Finding No. 4.

f. Delay Complaint ¶ 60 outlines the RFI system agreed upon by PCL and USBR to address difficulties experienced by PCL. Delay Complaint ¶ 61-68 discusses the application of the RFI system to PCL's Contract performance. Delay Complaint ¶ 60-68 support no other assertions in Proposed Finding No. 4.

g. Delay Complaint ¶¶ 72-74 outline the CRX system used by PCL to identify actual or constructive Contract changes. Delay Complaint ¶¶ 75-80 discuss the application of the CRX system during PCL's Contract performance. Delay Complaint ¶¶ 72-80 support no other assertions in Proposed Finding No. 4.

Since Proposed Finding No. 6 discusses the Change Request Extras ("CRX") in more detail, PCL proposes that the reference to the contractually-required time impact evaluations associated with CRXs be moved to the Revision to Proposed Finding No. 6. Based upon PCL's objections, it proposes the following revision to Proposed Finding No. 4:

> During performance of the Contract, PCL identified difficulties it experienced to USBR through RFIs, Change Request Extras ("CRX"), and other contemporaneous written correspondence. Delay Complaint ¶¶ 59-60, 72-74.

5. Some of the individual aspects of the project of which PCL complained were delays to the excavation of the back slope at the rear of the parking structure ("back slope") (breach complaint ¶ 128; delay complaint ¶¶ 33-37), problems and delays constructing the ring beam in the visitor center ("ring beam") (breach complaint ¶ 128; delay complaint ¶¶ 33-37), and extra costs and delays caused by the installation of a drag tie in the foundation of the parking structure ("drag tie") (breach complaint ¶ 128), among others (delay complaint ¶¶ 33-37).

**RESPONSE:** PCL objects to the Government's characterization of the difficulties PCL experienced during Contract performance. PCL proposes that Proposed Finding No. 5 should follow the Court's language in *PCL I.* Finally, PCL objects to Proposed Finding No. 5 for the following reasons:

a. Breach Complaint ¶ 128 states that PCL encountered differing site conditions at various locations in the Parking Structure and Visitor Center. It supports no other assertions in Proposed Finding No. 5.

b. Delay Complaint ¶¶ 33-37 state that PCL encountered differing site conditions during Contract performance. They support no other assertions in Proposed Finding No. 5.

Based upon PCL's objections, it proposes the following revision to Proposed Finding No. 5:

> For instance, during construction, PCL encountered site conditions that varied from those depicted in the Contract drawings and specifications. Delay Complaint ¶ 36. At the northern end of the Parking Structure north of grid line 10 ("Backslope"), PCL encountered site conditions that prevented it from excavating according to the Contract. *PCL I* at 757. PCL also encountered site conditions that varied from those depicted in the Contract for the lateral structural support to be constructed at the L-line of the Parking Structure ("Drag Tie"). *Id.* at 760. Finally, due to over-excavation of rock, PCL could not construct the circular concrete ring footing that supported the upper part of the Visitor Center's elevator shaft ("Ring Beam"). *Id.* at 769.

6. PCL also periodically presented change order proposals in an attempt to negotiate payments for its individual CRXs. Delay complaint ¶¶ 72-29.

**RESPONSE:** PCL objects to the Government's characterization and description of PCL's CRXs. Furthermore, as noted in Response to Proposed Finding No. 4, PCL proposes that information about the contractually-required time impact evaluation be moved to the Revision to Proposed Finding No. 6. Accordingly, PCL proposes the following revision to Proposed Finding No. 6:

> While administering the Contract, USBR initiated changes to the Contract by requesting cost proposals from PCL or directing PCL, by unilateral modification, to proceed with changes. *PCL I* at 776. If additional work was required pursuant to USBR's actual or constructive changes, PCL assigned a CRX for the extra work. Delay Complaint ¶ 72. For all Contract changes and delays, Contract Clause H.10(i) required that PCL prepare a time-impact evaluation. *PCL I* at 779. While PCL submitted one preliminary time-impact evaluation with CRX No. 11, it never submitted other time-impact evaluations. *Id.* at 759, 779.

7. In 1994, with construction progressing towards substantial completion, PCL presented (but did not certify) a request for equitable adjustment ("REA") that sought approximately $23 million, based upon the entirety of PCL's construction delays and cost-

overruns through July of 1993 – virtually all of which were blamed upon Reclamation. PCL at 803; breach complaint ¶¶ 166-171; delay complaint ¶¶ 14, 86-90.

**RESPONSE:** PCL objects to the Government's characterization of PCL's REA. Specifically, PCL does not agree that its REA blamed USBR for all delays. In *PCL I*, this Court noted that the REA did not identify fault for 277 calendar days of delay for the Parking Structure and 435 calendar days of delay for the Visitor Center. *PCL I* at 803. Furthermore, PCL objects to Proposed Finding No. 7 for the following reasons:

a. Breach Complaint ¶¶ 166-171 and Delay Complaint ¶¶ 14, 86-90 discuss the submittal of PCL's REA and its rejection by the Government. They do not blame USBR for all of the delays and disruptions PCL experienced.

Based upon PCL's objections, it proposes the following revision to Proposed Finding No. 7:

> In late 1993, USBR's contracting officer requested that PCL submit a request for equitable adjustment ("REA"). Appendix 6 ¶ 166; Delay Complaint ¶ 86. Accordingly, on April 21, 1994, PCL submitted an uncertified REA for approximately $23 million based upon delays and disruptions arising from defective Contract drawings and specifications, different site conditions, time required for the resolution of RFIs, and time impacts due to Contract changes. *PCL I* at 780; Appendix 6 ¶ 168; Delay Complaint ¶ 88. PCL's REA covered the period from notice to proceed, October 22, 1991, to August 2, 1993. *PCL I* at 803.

8. PCL's REA purported to analyze the delays and disruptions caused by Reclamation and assigned most, but not all, of the responsibility for PCL's delayed performance and cost overruns to Reclamation. PCL at 780, 803.

**RESPONSE:** PCL objects to the Government's characterization of PCL's REA. As noted above, PCL does not agree that its REA blamed USBR for all delays. Furthermore, as also noted above, the citations to *PCL I* at 780, 803 do not support the assertions in Proposed Finding

No. 8. Finally, the assertions in Proposed Finding No. 8 have been addressed in the Revision to Proposed Finding No. 7. Accordingly, based upon PCL's objections, it proposes that Proposed Finding No. 8 be deleted.

9. PCL's perturbations at the back slope, ring beam, drag tie, and as a result of PCL's CRXs were featured prominently in PCL's REA. Delay complaint ¶88.

**<u>RESPONSE</u>:** As noted in the Response to Proposed Finding No. 4, PCL objects to USBR's use of the word "perturbation." In addition, PCL objects to Proposed Finding No. 9 because Delay Complaint ¶ 88 does not suggest that the Backslope, Ring Beam, Drag Tie, or PCL's CRXs were featured prominently in the REA. Delay Complaint ¶ 88. Instead, Delay Complaint ¶ 88 states, "The uncertified REA based entitlement on delays and disruptions arising from defective Contract drawings and specifications, different site conditions, time required resolution of RFIs, and time impacts due to Contract changes." *Id.* Based upon PCL's objections, it proposes that Proposed Finding No. 9 be deleted.

10. Reclamation found no Government liability under PCL's REA based, in part, upon PCL's failure to provide valid contractually-required time-impact evaluations for its claimed delays and disruptions, but Reclamation indicated a willingness to consider further analysis by PCL in which Reclamation even volunteered to participate. <u>PCL</u> at 780; delay complaint ¶ 89.

**<u>RESPONSE</u>:** PCL objects to Proposed Finding No. 10 because neither *PCL I* at 780, nor Delay Complaint ¶ 89 state that USBR found no liability based upon "PCL's failure to provide valid contractually-required time-impact evaluations for its claimed delays and

disruption." *PCL I* at 780; Delay Complaint ¶ 89. Based upon PCL's objections, it proposes the following revision to Proposed Finding No. 10:

> On February 24, 1995, USBR's contracting officer notified PCL that USBR had evaluated the REA. *PCL I* at 780; Delay Complaint ¶ 89. Although the contracting officer found no entitlement, the contracting officer requested that PCL participate in a fact-finding session regarding preparation of an as-built schedule in order to agree upon responsibility for critical delays to the project. *PCL I* at 780; Delay Complaint ¶ 89. PCL interpreted this as a denial of the REA in its entirety. *PCL I* at 780; Delay Complaint ¶ 90.

11. Instead of certifying or further refining its REA, however, PCL chose to abandon the REA and instead submitted a certified claim based upon the exact same transactional facts as its REA (including the back slope, ring beam, drag tie, and contract changes). Breach complaint ¶¶ 128, 166-169; delay complaint ¶¶ 33-37, 86-90.

**RESPONSE:** PCL objects to the Government's characterization of PCL's REA or Breach Claim. PCL also objects to the Government's legal conclusion that PCL's Breach Claim is based upon the "exact same transactional facts" as its REA. Finally, PCL objects to Proposed Finding No. 11 for the following reasons:

a. Breach Complaint ¶¶ 128, 166-69 and Delay Complaint ¶¶ 33-37, 86-89 do not support the assertions in Proposed Finding No. 11.

Based upon PCL's objections, it proposes the following revision to Proposed Finding No. 11:

> On July 25, 1995, PCL submitted a certified claim to USBR's contracting officer pursuant to the Contract Disputes Act of 1976, 41 U.S.C. §605(c) ("Breach Claim"). *PCL I* at 781; Breach Claim, Appendix 4. The Breach Claim stated two primary legal bases for recovery, (1) breach of the Contract and (2) a violation of the Anti-Deficiency Act. Appendix 4, p. 1. In the Breach Claim, PCL asserted that the USBR breached the Contract by (a) making material misrepresentations during the award process; (b) fraudulently inducing PCL into accepting the Contract; (c) materially hindering PCL's ability to perform Contract work; and (d) making a number of cardinal changes during PCL's Contract performance. *Id.*, pp. 2-6.

12. Without any indication that PCL wished to "split" its REA into two or more claims and to move forward with one claim while reserving another, PCL's certified claim simply characterized the same transactional factual events depicted in its REA as a "breach of contract," "fraud in the inducement," "hindrance," "cardinal change," and/or "defective specifications." Breach Complaint.

**RESPONSE**: PCL objects to the Government's characterization of PCL's REA, Breach Claim, and its reservation of rights for delays and disruptions. PCL also objects to the Government's legal conclusion that PCL's Breach Claim is based upon the "same transactional factual events" as depicted in its REA. Furthermore, the Government mischaracterizes the legal claims made by PCL in the Breach Claim. As noted in the Response to Proposed Finding No. 11, PCL asserted two primary legal bases for recovery, (1) breach of the Contract and (2) a violation of the Anti-Deficiency Act. *See* Response to Proposed Finding No. 11. PCL asserted that the USBR breached the Contract by (a) making material misrepresentations during the award process; (b) fraudulently inducing PCL into accepting the Contract; (c) materially hindering PCL's ability to perform the Contract work; and (d) making a number of cardinal changes during PCL's performance. *See id.* Finally, USBR fails to provide any exact citations for the assertions in Proposed Finding No. 12. Since Proposed Finding No. 12 adds no additional uncontroverted facts, PCL proposes that Proposed Finding No. 12 be deleted.

13. When Reclamation denied PCL's certified claim, PCL appealed the denial to this Court by filing the breach complaint that mirrored both the REA and certified claim. The breach complaint was base upon the same transactional facts as both and specifically relied, again, upon perturbations at the back slope, ring beam, and drag tie, as well as unresolved CRXs and all of

the same transactional facts set forth in the REA and certified claim. Breach complaint ¶¶ 5-6, 128, 165-169.

**RESPONSE:** As noted in Response to Proposed Finding No. 4, PCL objects to USBR's use of the word "perturbation." PCL also objects to the Government's characterization of PCL's Breach Complaint, Breach Claim, and its REA. PCL objects to the Government's legal conclusion that PCL's Breach Complaint "mirrored" the REA. Furthermore, PCL objects to the legal conclusion that the Breach Claim and Breach Complaint are based upon the "same transactional facts" as its REA. Finally, PCL objects to Proposed Finding No. 13 for the following reasons:

a. Breach Complaint ¶¶ 5-6 only support the assertion in Proposed Finding No. 13 that USBR denied PCL's Breach Claim. They provide no support to other assertions in Proposed Finding No. 13.

b. Breach Complaint ¶¶ 128, 165-69 do not support the assertions in Proposed Finding No. 13.

Based upon PCL's objections, it proposes the following revision to Proposed Finding No. 13:

> On September 21, 1995, USBR's contracting officer denied PCL's Breach Claim in its entirety. *PCL I* at 781; Final Decision, Appendix 5. Thereafter, PCL filed two complaints in the Court based upon the contracting officer's denial of the Breach Claim. *PCL I* at 751; Delay Complaint ¶¶ 105-06. PCL filed a preliminary complaint on October 4, 1995. *PCL I* at 751; Delay Complaint ¶ 106. Following discovery, PCL filed its First Amended Complaint on April 1, 1996 ("Breach Complaint"). *PCL I* at 751; Appendix 6.

14. Again, PCL's breach complaint contained no indication whatsoever that PCL wished, or expressly reserved the right, to split its multiple legal theories away from other separate, un-litigated, claims based upon the same transactional facts. PCL's breach complaint

simply repackaged the same transactional facts (delays and cost overruns allegedly caused by Reclamation's contract and maladministration thereof) into a series of legal theories based upon breach of contract, misrepresentation, superior knowledge, breach of implied warranty, cardinal change, and hindrance of performance.[2] Breach Complaint.

**RESPONSE:** PCL objects to the Government's characterization of PCL's Breach Claim, Breach Complaint, and its reservation of rights to bring claims for delays and disruptions. PCL also objects to the Government's legal conclusion that the Breach Complaint is based upon the "same transactional facts" as its REA. Finally, USBR fails to provide any exact citations for the assertions in Proposed Finding No. 14. Based upon PCL's objections, it proposes the following revision to Proposed Finding No. 14:

> In the Breach Complaint, PCL asserted ten counts that were virtually identical to the issues PCL had raised in its Breach Claim: (1) breach of implied-in-fact contract based upon fraud in the inducement; (2) breach of contact based upon fraud in the inducement; (3) breach of contract based upon superior knowledge regarding design; (4) breach of contract based upon misrepresentation; (5) breach of contract based upon breach of warranty regarding accuracy of drawings and specifications; (6) breach of contract based superior knowledge regarding design agent's performance; (7) breach of contract based upon breach of duty not to under or delay; (8) breach of contract based upon cardinal change; (9) illegal contract based upon violation of FAR §§16.103(a) and 16.202-2; and (10) illegal contact based upon violation of 31 U.S.C. §§1341, 1342 and 1502. *PCL I* at 751; Appendix 6 ¶¶ 180-330.

15. PCL's breach complaint did not assert that PCL's delays and disruptions entitled PCL to relief under the changes clause (or any other clause) of the contract. Breach Complaint, Prayer for Relief.

---

[2] PCL presented the same legal theories in its complaint as in its certified claim except it added counts for "illegally funded contract," and "illegal contract based upon violation of FAR Part 16". Breach complaint p 10.

**<u>RESPONSE</u>:** PCL agrees with Proposed Finding No. 15. For consistency, PCL proposes the following revision to Proposed Finding No. 15:

> PCL's Breach Complaint did not assert that PCL's delays and disruptions entitled PCL to relief under the changes clause (or any other clause) of the Contract. Appendix 6, Prayer for Relief.

16. Although for ease of reference, PCL, the Court, and Government counsel periodically referred to PCL's case as a "breach of contract" or "total breach" claim, PCL actually litigated no fewer than <u>six</u> distinct legal theories – none of which are identical to each other. Breach complaint.

**<u>RESPONSE</u>:** PCL does not agree that PCL, the Government, and the Court "periodically referred to PCL's case as a 'breach of contract' or "total breach' claim" for ease of reference. The Breach Compliant clearly identified that PCL was asserting claims for breach of contract. Appendix 6 ¶¶ 210-303. This Court acknowledged that PCL sought recovery based upon breach of contract. *PCL I* at 751, 783. Most importantly, the Government also acknowledged that PCL sought recovery based upon breach of contract. For instance, throughout its Post Trial Brief in *PCL I*, the Government referred to PCL's claim as a breach of contract claim. Selected Pages of Post Trial Brief, Appendix 8, pp. 1, 2, 5, 15, 18, 137, 179, 184, 189, 195, 223, 224, 228, 249, 289-91, 325, and 326. Nowhere in the Government's Post-Trial Brief does it note that it was referencing PCL's claim as breach of contract for ease of reference. Finally, PCL outlines the legal arguments it asserted in the Breach Complaint in the Response to Proposed Finding No. 14. Since Proposed Finding No. 16 adds no additional uncontroverted facts, PCL proposes that Proposed Finding No. 16 be deleted.

17. PCL's "fraud in the inducement" theory suggested that the original contract solicitation was so "severely defective" that PCL was duped into signing the contract. Breach Complaint ¶¶ 210-233.

**RESPONSE:** PCL objects to the Government's characterization of PCL's count for breach of contract based upon fraud in the inducement in the Breach Complaint as inaccurate. Appendix 6 ¶¶ 210-233. Based upon PCL's objections, it proposes the following revision to Proposed Finding No. 17:

> PCL's count for breach of contract based upon fraud in the inducement in the Breach Complaint alleged that USBR fraudulently induced PCL to enter into the Contract by making representations about and concealing the true nature of the defective Contract drawings and specifications. Appendix 6 ¶¶ 210-233.

18. PCL's "cardinal change" theory, on the other hand, was based entirely upon events that occurred during performance – that contract changes and the need for numerous RFIs and CRXs constituted a fundamental change to the nature and the scope of the contract. Breach Complaint ¶¶ 298-303.

**RESPONSE:** PCL objects to the Government's characterization of PCL's count for breach of contract based upon cardinal change in the Breach Complaint as inaccurate. Appendix 6 ¶¶ 298-303. Based upon PCL's objections, it proposes the following revision to Proposed Finding No. 18:

> PCL's count for breach of contract based upon cardinal change alleged that USBR breached the Contract by making cardinal changes to the Contract. Appendix 6 ¶ 302. Specifically, the government substantially changed the physical nature of the foundation systems to the Parking Structure and Visitor Center, as well as substantially changed the nature of PCL's efforts under the Contract. *Id.* ¶¶ 300-01.

19. The only identical aspect of PCL's different legal theories was a demand for total cost damages of $31,040,071. Breach Complaint, Prayer for Relief.

**RESPONSE:** PCL objects to the Government's characterization of PCL's ten counts in the Breach Complaint. Appendix 6 ¶¶ 180-330. PCL proposes that Proposed Finding No. 19 be deleted. In the alternative, based upon PCL's objections, it proposes the following revision to Proposed Finding No. 19:

> In the Breach Complaint, PCL sought total cost damages of $31,040.071. Appendix 6, Prayer for Relief.

20. The "total" or "global" nature of PCL's breach claims more accurately describes the amount of damages sought by PCL, and the method of its calculation, rather than a single "global" construction event or time period covered by PCL's breach claim and complaint. PCL at 800.

**RESPONSE:** PCL objects to the Government's characterization of the Breach Complaint as inaccurate. Furthermore, *PCL I* at 800 states that PCL's seventh count in the Breach Complaint for breach of contract based upon breach of duty not to hinder or delay "is presented as a total costs claim." *PCL I* at 800. The citation to *PCL I* does not support other assertions in Proposed Finding No. 20. Accordingly, PCL proposes that Proposed Finding No. 20 be deleted. In the alternative, based upon PCL's objections, it proposes the following revision to Proposed Finding No. 20:

> PCL's count for breach of contract based upon breach of duty not to under or delay alleged that USBR breached the Contract through the following actions: (1) failing to timely and orderly resolve Contract drawing and specification defects: (2) unreasonably interpreting the Contract; (3) failing to authorize timely Contract modifications and resulting payments to PCL; and (4) failing to staff adequately the project. Appendix 6 ¶¶ 286-97.

21. The litigation of PCL's case was lengthy and expensive. PCL at 782.

**RESPONSE:** PCL objects to Proposed Finding No. 21 because *PCL I* at 782 does not state that *PCL I* was expensive. *PCL I* at 782. Furthermore, PCL does believe that Proposed Finding No. 21 is necessary to resolving the Government's Motion for Summary Judgment. Accordingly, PCL proposes that Proposed Finding No. 21 be deleted.

22. It included a summary judgment proceeding whereby PCL's "illegal funding" claims were eliminated (PCL Construction Services, Inc. v. United States, 41 Fed. Cl. 242 (1998); delay complaint ¶ 19), two rounds of discovery which included depositions of approximately 40 fact witnesses (some deposed twice), analysis of PCL's case by six expert witnesses (four of whom were retained by PCL), separate claims by PCL challenging its termination for default and seeking return of liquidated damages and funds retained by Reclamation, a trial that occupied 51 days in Court over a period of 17 months (TR. 12780), an unsuccessful multi-episode attempt to mediate a resolution to the case (which included yet another analysis of the project by an expert witness for PCL) (PCL at 782), and a Government counterclaim for defective components of the theater turntable feature of the visitor center that was defectively designed and constructed by PCL.

**RESPONSE:** PCL objects to all of the Government's characterizations in Proposed Finding No. 22. PCL also does believe that Proposed Finding No. 22 is necessary to resolving the Government's Motion for Summary Judgment. Accordingly, PCL proposes that Proposed Finding No. 22 be deleted. In the alternative, based upon PCL's objections, it proposes the following revision to Proposed Finding No. 22:

On June 24, 1998, the Court dismissed PCL's tenth count in the Breach Complaint for illegal contract based upon violation of 31 U.S.C. §§1341, 1342 and 1502. *PCL Construction Services, Inc. v. United States*, 41 Fed. Cl. 242 (1998); Delay Complaint ¶ 19.

At the Court's urging and shortly before the Government filed its Post Trial Brief, PCL sent a time-impact analysis to the Government in an attempt to initiate settlement discussions. In a May 27, 1999, letter from Brian S. Smith to Herbert L. Fenster, Appendix 9, the Government rejected PCL's offer to discuss settlement based on a time-impact analysis. In particular, the Government stated:

> [W]e will not engage in discussion with PCL unless and until PCL dismisses its breach of contract case with prejudice and submits a certified equitable adjustment claim for delay/impacts, or the Court enters judgment in favor of the Government on all counts of PCL's breach of contract case and PCL submits a certified equitable adjustment claim for delay/impacts. If, on the other hand, the Court finds in favor of PCL upon any aspect of PCL's breach of contract case, the substance of the Court's decision will, by definition, dictate the parameters of any "damages" proceedings and any subsequent settlement discussions.

*Id.*

In addition to its Breach Claim, PCL submitted a certified claim to USBR's contracting officer on November 22, 1995, which requested release to PCL of previously assessed liquidated damages in the amount of $1,351,838 ("Liquidated Damages Claim"). *PCL I* at 781; Delay Complaint ¶ 16. The contracting officer denied the Liquidated Damages Claim on January 23, 1996, and PCL appealed the final decision by filing a complaint on July 23, 1996 ("LD Complaint"). *PCL I* at 751-52, 781-82; Delay Complaint ¶¶ 16, 18. The Court issued an opinion on the issue of liquidated damages on August 28, 2002 in *PCL Construction Services, Inc. v. United States*, 53 Fed. Cl. 478 (2002) ("*PCL II*"). *PCL II* is not the subject of the Government's Motion for Summary Judgment.

When PCL submitted the Liquidated Damages Claim, it also notified USBR that it would not perform additional work under the Contract because it believed that USBR was requesting changes outside the Contract and USBR's retention of money was contrary to the Contract requirements. *PCL I* at 781. On March 6, 1996, USBR's contracting officer notified PCL that it was terminating the Contract. *Id.* In the LD Complaint, PCL appealed the decision by the contracting officer to terminate PCL for default. *Id.* at 752. In *PCL I*, the Court upheld PCL's termination. *Id.* at 808-12.

23. Although litigation of PCL's case provided PCL with the opportunity for a full and complete adjudication of the transactional factual events depicted in PCL's REA, certified

claim, and breach complaint, PCL never attempted to (retroactively) split or expressly reserve any additional claims arising out of the same transactional facts.

**RESPONSE:** PCL objects to the Government's characterization of PCL's REA, Breach Claim, Breach Complaint, and its reservation of rights for delays and disruptions as inaccurate and improperly including legal conclusions. PCL objects to the Government's legal conclusion that PCL's REA is based upon the same "transactional factual events" as its Breach Claim or Breach Complaint. Based upon its objections, PCL proposes that Proposed Finding No. 23 be deleted.

24. PCL and its experts rejected the suggestion that a traditional contract-based delay-disruption/changes claim was more appropriate than PCL's many "breach" theories when they testified that a traditional schedule/delay analysis of the project was "impossible." See, e.g., Bennett Tr. 61-62, 698-700; Eudy Tr. 6351; Fenster Tr. 6477-78; Mizell Tr. 6540, 6719-6721; Kellogg Tr. 7900, 7903-4, 7943-7945, 8062, 8176; Schwartzkopf Tr. 12008.

**RESPONSE:** PCL objects to the Government's statement that "traditional schedule/delay analysis of the project was 'impossible.'" Furthermore, PCL objects to Proposed Finding No. 24 for the following reasons:

a. The Government's citation to "Bennett Tr. 61-62" is incorrect. Tr. 61-62 is not the testimony of James Bennett ("Bennett"), who was president of PCL, but instead is an excerpt from the opening statement of Government's counsel. Trial Transcript, Appendix 7, pp. 61-62.

b. More importantly, Tr. 61-62 does not support the assertions in Proposed Finding No. 24.

c. In Bennett Tr. 698-700, Bennett expressed his personal belief that breach of contract was the most appropriate method to make a claim with USBR. *Id.*, pp. 698:24– 99:9. However, he explained that PCL pursued a breach of contract claim because "it became apparent that it was a breach of contract, so we presented a breach-of-contract claim." *Id.* 696:1-3. Furthermore, Bennett did not state that "a traditional schedule/delay analysis of the project was 'impossible.'"

d. In Eudy Tr. 6351, Silas Eudy ("Eudy") noted the potential difficulty in demonstrating the full extent of every impact PCL experienced during Contract performance by means of the time-impact evaluations required by Contract Clause H.10(i). *Id.*, pp. 6350-51. He did not discuss what the Government refers to as "a traditional schedule/delay analysis of the project," nor did he discuss whether a delay and disruption claim was more appropriate than a breach claim.

e. In Fenster Tr. 6477-78, Herbet Fenster, counsel for PCL ("Fenster"), stated that due to the defective Contract drawings and specifications, PCL could not create a baseline schedule reflecting a beginning-to-end sequence of work. *Id.*, pp. 6477-78. He did not discuss what the Government refers to as "a traditional schedule/delay analysis of the project," nor did he discuss whether a delay and disruption claim was more appropriate than a breach claim.

f. In Mizell Tr. 6540, Willy Mizell ("Mizell") stated that PCL could not follow the procedures outlined in Contract Clause H.10(i) for the submittal of time impact

evaluations for every Contract change or delay. *Id.*, p. 6540:2-16. He explained that PCL could not conform to Contract Clause H.10(i) because the Contract did not anticipate PCL experiencing such a vast amount of Contract changes. *Id.*, p. 6540:11-16. Mizell did not discuss what the Government refers to as "a traditional schedule/delay analysis of the project," nor did he discuss whether a delay and disruption claim was more appropriate than a breach claim.

g. Based upon the Government's citation to Mizell Tr. 6719-21, PCL cannot determine what document Mizell examined. Since the Government did not attach any exhibits to this citation, PCL cannot make a meaningful response. However, in Tr. 6719-21, Mizell did not discuss what the Government refers to as "a traditional schedule/delay analysis of the project," nor did he discuss whether a delay and disruption claim was more appropriate than a breach claim

h. In Kellogg Tr. 7900, Joseph Kellogg ("Kellogg") said that on a highly impacted job such as the Parking Structure and Visitor Center, it was "difficult" to determine the actual impacts of non-time related impacts. *Id.*, pp. 7899:25–7900:4. Government's counsel, not Kellogg, used the word "impossible." *Id.*, p. 7900:5-7. Kellogg did not discuss what the Government refers to as "a traditional schedule/delay analysis of the project," nor did he discuss whether a delay and disruption claim was more appropriate than a breach claim

i. In Kellogg Tr. 7903-4, Kellogg noted that on a highly impacted job such as the Parking Structure and Visitor Center, it was impossible to do a Retrospective Schedule Analysis that "had meaning on a highly impacted job." *Id.*, p. 7903:19-21. He did not discuss what the Government refers to as "a traditional schedule/delay analysis of the project," nor did he discuss whether a delay and disruption claim was more appropriate than a breach claim

j. In Kellogg Tr. 7943-45, Government's counsel asked Kellogg about his experiences using various types of schedule analyses in prior construction projects involving USBR. *Id.*, pp. 7940:4-6; 7943:11-23. Government's counsel, not Kellogg, used the word "impossible." *Id.*, p. 7943:20-24. Kellogg did not discuss what the Government refers to as "a traditional schedule/delay analysis of the project," nor did he discuss whether a delay and disruption claim was more appropriate than a breach claim.

k. In Kellogg Tr. 8062, Kellogg stated that during PCL's performance of the Contract and afterwards, it would have been very difficult to create time impact evaluations contemplated by Contract Clause H.10(i) "with any degree of certainty." *Id.*, pp. 8061:2-5; 8062:10-11; 8062:19–8063:6. Government's counsel, not Kellogg, used the word "impossible." *Id.* Kellogg did not discuss what the Government refers to as "a traditional schedule/delay analysis of the project," nor did he discuss whether a delay and disruption claim was more appropriate than a breach claim.

l. In Kellogg Tr. 8176, Kellogg expressed his opinion that one could not do a meaningful "time-impact analysis." *Id.*, p. 8176:9-12. The trial transcript does not identify what type of analysis he was referencing. Furthermore, Kellogg did not discuss whether a delay and disruption claim was more appropriate than a breach claim.

m. In Schwartzkopf Tr. 12008, William Schwartzkopf stated that it would have been difficult and time-consuming, but possible to create a time impact evaluation pursuant to Contract Clause H.10(i) after PCL's completion of its Contract performance. *Id.*, p. 12007:18–12008:1. He did not discuss what the Government refers to as "a traditional

schedule/delay analysis of the project," nor did he discuss whether a delay and disruption claim was more appropriate than a breach claim.

Based upon its objections, PCL proposes that Proposed Finding No. 24 be deleted.

25. PCL's president testified that PCL's own summary level schedule delay analysis was "wrong." Bennett Tr. 710; PCL I at 802.

**RESPONSE:** PCL objects to Proposed Finding No. 25 because it takes the statement by Bennett completely out of context. First, Bennett testified about a "summary-level delay analysis" created by Peterson Consulting ("Peterson"), not a schedule prepared by PCL itself. Appendix 7, p. 701:10-13; *PCL I* at 802. Second, Bennett did not say that the entire "summary-level delay analysis" created by Peterson was wrong. Instead, Bennett said that Peterson's conclusion that there was three months of delay attributable to PCL was wrong. Appendix 7, p. 701:10-13. Third, the citation to *PCL I* at 802 does not support the assertion in Proposed Finding No. 25. *PCL I* at 802. Finally, PCL does not believe that Proposed Finding No. 25 is necessary to resolving the Government's Motion for Summary Judgment. Based upon its objections, PCL proposes that Proposed Finding No. 25 be deleted.

26. Throughout the litigation, the Government urged PCL to abandon its breach theories in favor of a contract-based claim. See, e.g., Tr. 64-65 (opening statements).

**RESPONSE:** PCL objects to Proposed Finding No. 26 because Tr. 64-65 does not support the assertion in Proposed Finding No. 26. Based upon its objection, PCL proposes that Proposed Finding No. 26 be deleted.

27. PCL expressly refused to do so, even when cautioned by the Court as follows:

| | |
|---|---|
| The Court: | Are you saying that your client is absolutely adamant that they will not present a certified claim at this point? |
| Mr. Fenster: | Yes, Your Honor. |
| The Court: | So be it. I think that's foolish, but so be it. |

Tr. 13042.

**RESPONSE:** First, PCL objects to Proposed Finding No. 27 because it takes this statement by Fenster completely out of context. At the very end of Closing Arguments in *PCL I*, the Court entered into a discussion with Fenster and Government's counsel about alternatives in the event the Court found no breach of contract. Appendix 7, p. 13036:9-10. The Court, first, inquired about reviving the settlement process and queried whether settlement should begin before or after submitting a certified claim to the contracting officer. *Id.*, p. 13036:16-19. Fenster noted that PCL likely would not go back to the contracting officer because of numerous prior failures. *Id.*, p. 13036:19-21. The Court, then, asked PCL which option it would consider if the Court found against it: (1) submit a certified claim to the contracting officer while appealing, (2) submit a certified claim to the contracting officer instead of appealing, (3) submit no certified claim to the contracting officer. *Id.*, p. 13037:14-22. While PCL noted its constant willingness to enter into negations with USBR, Fenster said that under the alternatives presented by the Court, PCL would not return to the contracting officer. *Id.*, p. 13037:17-18. He justified PCL's position based upon prior attempts that were "tortured" and resulted in zero success. *Id.*, p. 13037:19-20. Fenster noted, "This is a problem of not getting a fair and objective consideration, and it's a problem with the inordinate period of time that this agency has taken at

every step along the way." *Id.*, p. 13040:5-9. Finally, he did not think there would be any contracting officer with sufficient authority to settle this matter. *Id.*, p. 13041:8-13. Based upon these reasonable justifications, Fenster said that PCL would not submit a "certified claim **at this point**?" *Id.*, p. 13042:1-6 (emphasis added).

Second, PCL does not believe that Proposed Finding No. 27 is necessary to resolving the Government's Motion for Summary Judgment. Based upon its objections, PCL proposes that Proposed Finding No. 27 be deleted. In the alternative, based upon its objections, PCL proposes the following revision to Proposed Finding No. 27:

> At the very end of Closing Arguments in *PCL I*, the Court entered into a discussion with Fenster and Government's counsel about alternatives in the event the Court found no breach of contract. Appendix, 13036:9-10. The Court, first, inquired about reviving the settlement process and queried whether settlement should begin before or after submitting a certified claim to the contracting officer. *Id.*, p. 13036:16-19. Fenster noted that PCL likely would not go back to the contracting officer because of numerous prior failures. *Id.*, p. 13036:19-21. The Court, then, asked PCL which option it would consider if the Court found against it: (1) submit a certified claim to the contracting officer while appealing, (2) submit a certified claim to the contracting officer instead of appealing, (3) submit no certified claim to the contracting officer. *Id.*, p. 13037:14-22. While PCL noted its constant willingness to enter into negations with USBR, Fenster said that under the alternatives presented by the Court, PCL would not return to the contracting officer. *Id.*, p. 13037:17-18. He justified PCL's position based upon prior attempts that were "tortured" and resulted in zero success. *Id.*, p. 13037:19-20. Fenster noted, "This is a problem of not getting a fair and objective consideration, and it's a problem with the inordinate period of time that this agency has taken at every step along the way." *Id.*, p. 13040:5-9. Finally, he did not think there would be any contracting officer with sufficient authority to settle this matter. *Id.*, p. 13041:8-13. Based upon these justifications, Fenster said that PCL would not submit a "certified claim at this point?" *Id.*, p. 13042:1-6.

28. The trial-level litigation of the perturbations to the project concluded with this Court's 67-page decision that rejected all of the claims presented in PCL's breach complaint that arose from the transactional facts upon which PCL's REA and certified claim were based. PCL at 812.

**RESPONSE:** As noted in Response to Proposed Finding No. 4, PCL objects to the USBR's use of the word "perturbation." PCL also objects to Proposed Finding No. 28 because the decision in *PCL I* is fifty-seven (57) pages. More importantly, PCL objects to the Government's characterization of PCL's REA, Breach Claim, and Breach Complaint. PCL objects to the Government's legal conclusion that PCL's Breach Claim and its Breach Complaint are based upon the same "transactional facts" as the REA. Based upon its objections, it proposes the following revision to Proposed Finding No. 28:

> On September 20, 2000, the Court issued its opinion in *PCL I*, denying recovery to PCL on all ten counts presented in the Breach Complaint. *PCL I* at 745, 812.

29. PCL's appeal of this Court's trial decision was rejected, after full briefing and argument, in an unpublished decision of the United States Court of Appeals for the Federal Circuit. Delay complaint ¶ 23.

**RESPONSE:** PCL agrees with Proposed Finding No. 29, but offers the following revision:

> PCL appealed the Court's decision in *PCL I* to the United States Court of Appeals for the Federal Circuit ("Federal Circuit"). *PCL Construction Services, Inc. v. United States*, 96 Fed. Appx. 672, 2004 WL 842984, *2 (Fed. Cir. 2004). On April 7, 2004, in an unpublished decision, the Federal Circuit affirmed the Court's decision. *Id.* at *1, 6.

30. At no time during PCL's partial performance of the contract, the presentation of PCL's REA, the submission of PCL's certified claim, or the trial and appellate litigation of PCL's case, did PCL seek, or expressly attempt to reserve the right, to split its certified claim into separately submitted or litigated claims arising out of the same transactional facts.

**RESPONSE:** As noted in the Response to Proposed Finding No. 1, PCL objects to the Government's characterization that PCL only partially performed the Contract. *See* Response to

Proposed Finding No. 1. Furthermore, PCL objects to the Government's characterization of PCL's REA, Breach Claim, Breach Complaint, the litigation of the Breach Complaint, the appeal of *PCL I*, or its reservation of rights for delays and disruptions. PCL also objects to the Government's legal conclusion that PCL's Breach Claim and Breach Complaint are based upon the "same transactional facts" as the REA. Finally, the Government provides no support for Proposed Finding No. 30. Accordingly, based upon its objections, PCL proposes that Proposed Finding No. 30 be deleted.

31. In 2005, after retaining new counsel, PCL submitted two new certified claims to Reclamation that arise out of the same transactional facts (the alleged perturbation of PCL's partial contract performance) that were fully and finally resolved upon the merits in PCL's prior litigation – including the back slope, ring beam, drag tie and unresolved CRXs. Delay complaint ¶¶ 6, 8.

**RESPONSE:** As noted in the Response to Proposed Finding No. 1, PCL objects to the Government's characterization that PCL only partially performed the Contract. *See* Response to Proposed Finding No. 1. Furthermore, PCL objects to the Government's characterization of PCL's Breach Claim, Breach Complaint, D&D Claim, CRX Claim, and Delay Complaint. PCL also objects to the Government's legal conclusion that PCL's D&D Claim, CRX Claim, and Delay Complaint are based upon the "same transactional facts" as the Breach Claim and Breach Complaint. Finally, Delay Complaint ¶¶ 6, 8 only state that PCL submitted its CRX Claim and D&D Claim to USBR's contracting officer on April 28, 2005 and September 12, 2005, respectively. Delay Complaint ¶¶ 6, 8. They do not support the other assertions in Proposed

Finding No.31. Based upon PCL's objections, it proposes the following revision to Proposed Finding No.31:

> On April 28, 2005, PCL submitted a certified claim to USBR's contracting officer, pursuant to 41 U.S.C. § 605(c), in the amount of $2,399,483, seeking additional direct costs under remedy granting provisions of the Contract for changes in the scope of the Contract ("CRX Claim"). CRX Claim, Appendix 10. Subsequently, on September 12, 2005, PCL submitted a certified claim to the contracting officer in the amount of $19,669,050, requesting costs incurred by PCL when it was delayed and disrupted by the Government in performing the Contract ("D&D Claim"). D&D Claim, Appendix 11.

32. After denial of PCL's new delay/disruption/CRX claims by Reclamation upon the basis of <u>res judicata</u>, (delay complaint ¶¶ 7, 9) PCL filed its delay complaint that seeks to re-litigate the same transactional facts – that were fully and finally resolved upon the merits in PCL's prior litigation. Delay complaint.

**<u>RESPONSE</u>:** PCL objects to the Government's characterization of PCL's Breach Claim, Breach Complaint, D&D Claim, CRX Claim, and Delay Complaint as inaccurate. PCL also objects to the Government's legal conclusion that PCL's D&D Claim, CRX Claim, and Delay Complaint are based upon the "same transactional facts" as the Breach Claim and Breach Complaint. Based upon PCL's objections, it proposes the following revision to Proposed Finding No.32:

> USBR's contracting officer denied PCL's CRX and D&D Claim in their entirety on September 12, 2005 and January 13, 2006, respectively. *See* Appendices 12 and 13. The contracting officer's denials did not address the merits of the CRX or D&D Claim, but instead, based the denials upon the doctrine of *res judicata*. *Id.*

33. PCL's delay complaint asserts five grounds for recovery that rely upon the same transactional facts as PCL's breach complaint. They are: A type I differing site condition claim,

a type II differing site condition claim, a changes clause claim, a "constructive changes" claim, and a suspension of work claim. Delay complaint ¶¶ 119-176.

**RESPONSE:** PCL objects to the Government's characterization of PCL's Breach Complaint and Delay Complaint. PCL also objects to the Government's legal conclusion that PCL's Delay Complaint is based upon the "same transactional facts" as the Breach Complaint. Based upon PCL's objections, it proposes the following revision to Proposed Finding No.33:

> PCL asserted five counts for recovery in its Delay Complaint: (1) Type I differing site conditions pursuant to Contract Clause I.4.10(a)(1); (2) Type II differing site conditions pursuant to Contract Clause I.4.10(a)(2); (3) changes pursuant to Contract Clause I.4.12; (4) suspension of work pursuant to Contract Clause I.4.3; and (5) constructive changes. Delay Complaint ¶¶ 119-176.

34. PCL's delay complaint contains a section entitled "preservation of claims" that relies only upon contract modifications and correspondence from the construction period that predate PCL's breach complaint. Delay complaint ¶¶ 81-85.

**RESPONSE:** PCL objects to Proposed Finding No. 34 because, among other grounds, PCL transmitted Contract modifications and correspondence associated with reservation of rights after it filed the preliminary breach complaint on October 4, 1995. For instance, PCL transmitted Modifications 142 and 143 to USBR by a letter dated October 6, 1995. Modifications, Appendix 2. Furthermore, PCL transmitted its costs proposal and backup for CRXs 534 and 535 to USBR by letters dated October 25, 1995. Correspondence, Appendix 3. Based upon PCL's objections, it proposes the following revision to Proposed Finding No. 34:

> PCL's Delay Complaint contains a section entitled "Perseveration of Claims" that discusses PCL's reservation of its rights for delay and disruption costs through Contract modifications and correspondence associated with Contract modifications and CRXs. Delay Complaint ¶¶ 81-85.

35. Pages 220-222 of PCL's post-breach-trial brief (arguing that the release/reservation language in bilateral contract modifications did not bar PCL's breach claim) is almost word-for-word with paragraphs 81-85 of PCL's delay complaint.

**RESPONSE:** PCL does not know whether the Government is citing to PCL's Initial Post-Trial Brief filed on January 25, 1999 or its Post-Trial Brief filed on February 22, 1999. Nonetheless, neither Pages 220-22 of PCL's Initial Post-Trial Brief or its Post-Trial Brief discuss PCL's reservation of rights for delays and disruptions. Instead, Pages 220-22 of PCL's Initial Post-Trial Brief and its Post-Trial Brief discuss changes made to Contract drawings and specifications by USBR in 1991. Finally, PCL does not believe that Proposed Finding No. 35 is necessary to resolving the Government's Motion for Summary Judgment. Based upon PCL's objections, PCL proposes that Proposed Finding No.35 be deleted.

DATED this 15th day of December, 2006.

SHERMAN & HOWARD LLC

By: s/ Durward E. Timmons
Durward E. Timmons

90 S. Cascade Avenue
Suite 1500
Colorado Springs, CO 80903-4015
Phone Number: (719) 475-2440
Facsimile: (719) 635-4576

Attorneys for Plaintiff PCL Construction Services, Inc.

OF COUNSEL:
Michael J. Cook
633 17th Street, Suite 3000
Denver, CO 80202
Phone Number: (303) 297-2900
Facsimile: (303) 298-0940

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of December, 2006, a true and correct copy of the foregoing was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Service is complete upon filing and parties may access this filing through the Court's system.

Peter D. Kiesler, Assistant Attorney General
David M. Cohen, Director
Deborah A. Bynum, Assistant Director
Brian S. Smith, Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
Attention: Classification Unit – 8th Floor
1100 L Street N.W.
Washington, D.C. 20530

s/ Durward E. Timmons