IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PCL CONSTRUCTION SERVICES, INC. | ) | |
| Plaintiff, | ) | Case No. 06-144C |
| v. | ) | Judge Horn |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

PCL Construction Services, Inc. ("PCL"), by and through its attorneys, Sherman & Howard, L.L.C., respectfully submits its Proposed Findings of Uncontroverted Fact in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment ("Proposed Findings"). PCL's Proposed Findings are based upon the following: (1) documentary evidence attached to PCL's Response to Defendant's Motion for Summary Judgment as Appendices 1 through 13, (2) the Court's opinion in *PCL Construction Services, Inc. v. United States*, 47 Fed. Cl. 745 (2000) ("*PCL I*"), (3) the Court's opinion in *PCL Construction Services, Inc. v. United States*, 53 Fed. Cl. 478 (2002) ("*PCL II*"), and (4) the United States Court of Appeals for the Federal Circuit's opinion in *PCL Construction Services, Inc. v. United States*, 96 Fed. Appx. 672, 2004 WL 842984 (Fed. Cir. 2004).

1. USBR issued Contract Modifications 4, 7, and 9 with a Release Clause that stated:

> The Contactor agrees that this supplemental agreement is a complete equitable adjustment for all Contractor proposals or claims whatsoever arising out of, resulting from, and/or directly related to the above occurrences, revisions to the contract, and/or this supplemental agreement and hereby releases the Government from all liability under this contract for further equitable adjustments for said occurrences, revisions, and/or this supplemental agreement.

*See* Versions of the Release Clauses in Contract Modifications, Appendix 1.

2. Beginning in late 1992, USBR included the following language in the Release Clause of Contract Modifications:

> The Contractor agrees that this supplemental agreement is a complete equitable adjustment for all Contractor proposals or claims whatsoever arising out of, resulting from, and/or directly related to the above occurrences, revisions to the contract, and/or this supplemental agreement and hereby releases the Government from all liability under this contract for further equitable adjustments for said occurrences, revisions, and/or this supplemental agreement, except for time and costs impacts for extended overhead which can not be determined until the effect of on the critical path of the project schedule is analyzed.

Contract Modifications 13-15, Appendix 2.

3. Over a period of time, the wording of the Release Clause evolved through four different versions during performance of the Contact. *See* Appendix 1. The final version of the Release Clause ("Final Version") provided, in relevant part:

> The Contactor agrees that this supplemental agreement is a complete equitable adjustment for all Contractor proposals or claims whatsoever arising out of, resulting from, and/or directly related to the above occurrences, revisions to the contract, and/or supplemental agreement and hereby releases the Government from all liability under this contract for further equitable adjustments for said occurrences, revisions, and/or this supplemental agreement, except for time and cost impacts for extended overhead, for impacts on unchanged work, and for any contribution toward the cumulative impact of all changes on the critical path of the project schedule.

*See id.*

4. USBR included the Final Version in Modifications 45, 46, 47, 48, 54, 63, 66, 67, 68, 69, 70, 71, 73, 74, 75, 76, 77, 78, 82, 84, 85, 87, 88, 89, 90, 91, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 105, 106, 107, 109, 110, 111, 114, 115, 116, 126, 127, 128, 131, 132, 133, 136, 137, 138, 139, 140, 142, and 143. *Id.*; *see also* Appendix 2.

5. After PCL submitted its certified breach claim on July 25, 1995, the USBR continued to issue Contract Modifications containing the Final Version. Appendix 2, 136-43.

6. In addition to Release Clauses contained in the Contract Modifications, PCL included claim reservation language in letters sent to the contracting officer and/or USBR concerning the Modifications. The following language is typical of such letters:

> [This CRX is] based solely on the usual cost elements such as, labor, material, and normal markups, and does not include any amount for changes in sequence of work, delays, disruptions, rescheduling, extended overhead, acceleration, and/or impact cost. The right is expressly reserved to make claim for any and all of these, and related items of cost, prior to any final settlement of this contract.

*See* Correspondence, Appendix 3.

7. On July 25, 1995, PCL submitted its certified Breach Claim ("Breach Claim") to the USBR contracting officer pursuant to the Contract Disputes Act of 1976 ("CDA"), 41 U.S.C. §605(c). Breach Claim, Appendix 4.

8. The Breach Claim stated two primary legal bases for the requested recovery of $31,040,071: (1) breach of contract; and (2) a violation of the Anti-Deficiency Act. *Id*, p. 2; *PCL I* at 751. PCL asserted that the USBR breached Contract No. 1-CC-30-09150 ("Contract") by (a) making material misrepresentations during the award process; (b) fraudulently inducing PCL into accepting the Contract; (c) materially hindering PCL's ability to perform the Contract work;

and (d) making a number of cardinal changes during PCL's performance. Appendix 4, pp. 2-6. PCL also asserted that the Contract was illegal and void as a result of the USBR's violation of the Anti-Deficiency Act and, therefore, the Contract should be reformed to provide PCL a recovery of its costs of performing the Contract or, in the alternative, that PCL should be compensated on a *quantum meruit* basis. *Id.*, p. 60.

9. PCL's Breach Claim made specific allegations concerning the USBR's acts and failures to act which PCL alleged amounted to a breach of the Contract. The specific allegations fell into four categories as follows:

> (1) Misrepresentation. The USBR issued "profoundly defective" drawings and specifications at the time of award. "The severity of those defects renders the contract terms covering changes, site conditions and other adjustments inadequate as remedies and renders the USBR liable for breach of contract for misrepresentation." *Id.*, p. 2.
>
> (2) Fraud in the Inducement. The USBR was aware, while PCL was not, that the drawings for the work were severely defective and would impact PCL's performance yet failed to notify PCL of the defects and nevertheless, awarded the Contract on a firm fixed price basis. "An FFP contract, however, is appropriate only when Contract drawings are accurate and the Contract can be performed as bid. As a result, the USBR breached the Contract through a fraud in the inducement." *Id.*
>
> (3) Hindrance. The USBR failed to properly administer the Contract. "The USBR substantially hindered PCL's performance by: (1) failing to resolve design defects so as not to delay the work; (2) imposing unreasonable contract interpretations on PCL; (3) failing to make timely payments to PCL; and (4) failing to support contract administration functions with adequate and qualified personnel." *Id.*, pp. 50-51.
>
> (4) Cardinal Change. "Because of the severely defective condition of the drawings and specifications at time of award, the substantial changes in the physical nature of the structures that occurred during Contract performance, and the substantial change in PCL's duties during Contract performance,

> PCL was forced to identify drawing deficiencies and then construct to meet changed requirements over a substantially protracted period." *Id.*, p. 3.

10. Additionally, in the Breach Claim, PCL asserted that it was entitled to recover "all damages caused by the breach of contract which were foreseeable at the time of contracting." *Id.*, p. 53. PCL sought total cost damages in the amount of $31,040,071. *Id.*, p. 57.

11. On September 21, 1995, Carolyn Tempel, the USBR's contracting officer, issued a final decision denying PCL's Breach Claim in its entirety. Final Decision, Appendix 5. In denying the claim, the contracting officer noted that "[o]n April 24, 1994, PCL submitted a Request for Equitable Adjustment ("REA") based on a variety of different theories. This office responded on February 24, 1995, found little merit in the information presented in the REA, and suggested that the parties arrange a fact finding meeting. PCL rejected the invitation to meet and instead filed the instant Claim." *Id.* The contracting officer stated that by filing its July 25, 1995 Breach Claim, the USBR considered PCL as having withdrawn its earlier REA, and the Breach Claim was "essentially an all or nothing claim. Accordingly, we have evaluated the Claim based solely on the breach of contract and void contract theories." *Id.*, p 2. The summary of the contracting officer's final decision stated, in relevant part:

> I find that there has not been a breach of the contract, that the contract was legally executed, and that PCL has failed to demonstrate that each and every problem associated with the project was caused by the Bureau. Accordingly, since PCL has provided no means for me to determine the merits of any isolated part of the Claim, that may, in fact, have merit, or any means to apportion fault and identify the associated damages, the Claim as submitted is denied.

*Id.*, p. 12.

12. On October 4, 1995, PCL filed a Preliminary Complaint ("Preliminary Complaint") in the United States Court of Federal Claims which appealed the contracting officer's September 26, 1995 final decision denying PCL's Breach Claim. *PCL I* at 751. The Preliminary Complaint was assigned Case No. 95-666C. *Id.* Subsequently, on April 1, 1996, PCL filed a First Amended Complaint, which substantially mirrored its Preliminary Complaint ("Breach Complaint"). Breach Complaint, Appendix 6; *PCL I* at 751.

13. The Breach Complaint contained ten counts that were virtually identical to the issues PCL had raised in its Breach Claim. The count, claim for relief and basis for each are:

| Count | Claim for Relief | Basis |
|---|---|---|
| I | Breach of Implied-In-Fact Contract | Fraud in the Inducement |
| II | Breach of the Contract | Fraud in the Inducement |
| III | Breach of the Contract | Superior Knowledge Regarding Design |
| IV | Breach of the Contract | Misrepresentation |
| V | Breach of the Contract | Breach of Warranty Regarding Accuracy of Drawings and Specifications |
| VI | Breach of the Contract | Superior Knowledge Regarding Design Agent's Performance |
| VII | Breach of the Contract | Breach of Duty Not to Hinder or Delay |
| VII | Breach of the Contract | Cardinal Change |
| IX | Illegal Contract | Violation of FAR §§16.103(a) and 16.202-2 |
| X | Illegal Contract | Violation of 31 U.S.C. §§1341, 1342 and 1502 |

Appendix 6 ¶¶ 180-330.

14. The Breach Complaint sought damages of $31,040,071, plus appropriate CDA interest, attorneys' fees and costs. *Id.*, Prayer for Relief, pp. 39-41.

15. Thereafter, this Court conducted a lengthy, multi-part trial of the various issues contained in PCL's Breach Complaint. *PCL I* at 782.

16. In its opening argument in *PCL I*, the Government made the following statements:

> This is a breach of contract claim. It is not a claim for extended overhead, impacts of unchanged work and any contribution toward cumulative impact of all changes on the critical path of the project schedule.

Trial Transcript, Appendix 7, p. 58:10-13.

> So when PCL signed this bilateral modification relating to the ring beam releasing everything except this type of delay claim it was simply preserving for itself a right that it had under the contract to seek a delay cost related to the ring beam. But that's all, and that is not what is before you today.

*Id.*, pp. 59:22 - 60:2.

> They -- PCL will not and has never submitted the type of critical path analysis that it reserved itself -- reserved for itself the right to do if not promised to do in those modifications.

*Id.,* p. 64:15-18.

17. The Government submitted its 328-page Post Trial Brief to the Court on May 24, 1999 ("Post-Trial Brief"). Selected Pages of Post Trial Brief, Appendix 8.

18. In its Post Trial Brief, the Government made comments concerning PCL's reservations of rights for delays, disruptions, and/or impacts. *See id.*, pp. 18-19; 24-25; 32-33; 41; 47; 54; 61-62; 165; 224-25; 243; 286-90.

19. In particular, in its Post Trial Brief, the Government states:

> It was only after PCL had completed a substantial part of the contractual procedure, and had only to substantiate any delay or impact costs related to the changes already the subject of bilateral contract modifications, that PCL chose to abandon that process and break its agreement to seek compensation in that manner. Paradoxically, however, even after PCL had presented its breach of contract claim, it executed contract modifications that released Reclamation from 'all liability' for claims except a critical path,

> delay/impact, claim. Ex. 2284 Mods. 131-144 (36 CRX1s were negotiated and resolved via modifications 131 thru 144 (totaling $351,067) after PCL had submitted its breach of contract claim.

*Id.*, p. 184, n. 77.

> Although PCL has never placed a bona fide delay/impact claim within the jurisdiction of this Court . . ..
>
> PCL never presented a delay/impact claim to the contracting officer even though, as we discuss in more detail below, PCL released Reclamation from 'all liability' for claims other than delay/impact claims in bilateral modifications that relate to virtually all of the contract changes that PCL relies upon to support its case.

*Id*,. p. 325, n. 90.

20. At the Court's urging and shortly before the Government filed its Post Trial Brief, PCL sent a time-impact analysis to the Government in an attempt to initiate settlement discussions. In a May 27, 1999, letter from Brian S. Smith to Herbert L. Fenster, Appendix 9, the Government rejected PCL's offer to discuss settlement based on a time-impact analysis. In particular, the Government stated:

> [W]e will not engage in discussion with PCL unless and until PCL dismisses its breach of contract case with prejudice and submits a certified equitable adjustment claim for delay/impacts, or the Court enters judgment in favor of the Government on all counts of PCL's breach of contract case and PCL submits a certified equitable adjustment claim for delay/impacts. If, on the other hand, the Court finds in favor of PCL upon any aspect of PCL's breach of contract case, the substance of the Court's decision will, by definition, dictate the parameters of any "damages" proceedings and any subsequent settlement discussions.

*Id.*, p. 2

21. In its closing argument on July 2, 1999, Government's counsel read one of the forms of Release Clauses in Contract Modifications which the USBR and PCL had executed. Appendix 7, pp. 12976:18-12977:10. Government's counsel then noted:

> So that the plain meaning of this release is, we are reserving for ourselves the right to show you any critical path delay caused by that vehicle ramp change, but we are releasing all contractor proposals or claims whatsoever arising there from.

*Id.*, p. 12977:17-21.

22. Several times during the Government's closing argument, the Court asked questions concerning PCL's reservations of rights for delays, disruptions, and/or impacts. The following are statements made by the Court and Government's counsel:

> THE COURT: The impact of the changes would survive?
>
> MR. SMITH: They did not release the right to present an equitable adjustment delay claim.
>
> THE COURT: And that would be the only thing that would survive?
>
> MR. SMITH: Yes. Exactly. That is what we're saying, is that is the only thing that survived this release. They reserved for themselves the right to do it. And yeah, you're right, our position certainly is this case has not and has never been, either in its pleading form or in its evidence form, that kind of claim. And their experts said it 100 times. 'No, this is not a critical path delay claim. This is not an equitable adjustment claim. This is a breach claim.' Blah, blah, blah. So they reserved the right to take the equitable adjustment claim for delays caused by the changes to the vehicle ramp.

*Id.*, pp. 12978:25-12979:19.

23. After the Government concluded its arguments addressing each of the counts in PCL's Breach Complaint, the Court and Government counsel then discussed various options which might be available to resolve the parties' dispute. After urging the Court to find "no breach" on any of PCL's breach of contract counts, Government's counsel stated:

> MR. SMITH: Then PCL will be free to go off and make an equitable adjustment claim if it wants to. The contracting officer will get an opportunity to pass on it, as he has never been provided.

> And if the parties do not resolve them at that level, it will proceed just like a normal case. And maybe or maybe not you and I will see each other again litigating an equitable adjustment claim for delay. But that is the effect of what happens if you find no breach.
>
> THE COURT: And you're taking the position that despite all of the back and forth with the contracting officers in this case, including the good, the bad, and the ugly, that this equitable adjustment claim was never presented to the contracting officer or was simply never properly offered in this particular case, because they're different?
>
> MR. SMITH: No equitable adjustment claim was ever presented to the contracting officer as a certified claim, which is the gate through which they must pass to get to this Court. There is a certified claim, but it's a breach of contract claim.
>
> THE COURT: So the only certified claim you're saying that was presented to the contracting officer was for breach of contract?
>
> MR. SMITH: Yes. And we cite that in our brief. And the Appendix itself, that is their certified claim, certainly the cover letter is very easy for you to read, for you to pass on that issue too. There was no middle ground in that claim. They did not present an alternative basis as an equitable adjustment. And you heard PCL's witnesses tell you we were pursuing breach here.

*Id.*, pp. 12995:7-12996:14.

24. After discussing the uncertified request for equitable adjustment, the Court and Government's counsel continued their dialogue concerning the Government's position on the requirement for a certified claim as a condition precedent to a direct access claim:

> THE COURT: I'm just trying to understand your position.
>
> MR. SMITH: Our position is the only certified claim - which is the gate we must walk through to get to this Court - that was presented to the CO is a breach of contract claim. And no matter how you try to read it, there was no equitable adjustment claim there.
>
> * * *
>
> Frankly, legally I don't think it's possible to take the evidence in this case and arrive at a liability determination for equitable

> adjustment. Not only was it not pled that way, it was not presented that way either. PCL didn't try to show you we're liable for an equitable adjustment for the ped ramp or for the triangular bridge, and certainly not for a lot of the other things. Let's not forget that over half of the 665 days of delays occurred after all of these issues that we've been talking about at this trial were resolved. The second half of the project, after they were out of the ground. They're inside, they're building, they doing things [sic], and they're getting delayed a lot. And nobody's presented any evidence about whose fault that was, or anything whereby you could determine any type of liability for an equitable adjustment.
>
> THE COURT: There's been some talk in this case at various points that there is grounds for an equitable adjustment . . . . But there's certainly been language that there's some grounds for equitable adjustments.
>
> * * *
>
> But what's the correct result here? Do we send this back to the contracting officer while maintaining jurisdiction or not maintaining jurisdiction? I can do it one of several ways. Lets assume that's where I go for a moment, again, without telling you where I'm going. But talking hypothetically, let's assume that I think the right result is, in fact, to go the equitable adjustment route. I think the right result is, in fact, to go the equitable adjustment route. We can dismiss the case at the point without prejudice, or with prejudice, on the issues that we've decided and send it back. I can obviously, and would, I guarantee you, make sure that it came back to me . . . .

*Id.*, pp. 12999:4-13001:9.

25. In responding to the Court's question, "But what's the correct result here?", as quoted in Proposed Finding No. 24, Government's counsel responded:

> MR. SMITH: That is what you should do. You should find that there was no breach of contract here, that all of those counts that I just went over were not proven. Maybe there's an equitable adjustment liability out there somewhere. Fine. That's not for your to decide right now, because it's not before you and it can't be before you . . . .

*Id.*, pp. 13001:22-13002:3.

26. The Government then made the following assertion:

> MR. SMITH: We, the Bureau, are ready, and the contracting officer has always been and continues to be ready to adjudicate an equitable adjustment claim.
>
> THE COURT: Who's the contracting officer now? Because if it's the interim one, nobody will be ready to do anything. And I'll make that comment on the record.
>
> MR. SMITH: It is not. In fact, I'm not even sure what the contracting officer's name is at this point. But that is - again, by the book, that is what needs to happen here. And frankly, I don't think there's any other way for it to be dealt with.
>
> THE COURT: Assuming you're right on the breach of contract theory -
>
> MR. SMITH: Exactly. Obviously if I'm not, I concede that we go off on a breach of contract thing. So that's where we are. I don't think you can legally find an equitable adjustment here. A, because it was never presented. B, because the evidence of it was never offered. Certainly not in a way that is competent for you to make an intelligent equitable adjustment ruling. You simply haven't been given the tools to do that. By design, PCL was never pursuing an equitable adjustment. They were pursuing a total breach case. Those are your alternatives. You know what I think you should do with those alternatives.

*Id.*, pp. 13002:25-13004:1.

27. In the final dialogue, the Court and Government's counsel stated:

> THE COURT: Let's assume we do not find a total breach for a moment. Is there any potential for reviving the settlement process at that point, given that you've done a fair amount of work, that that is probably a decent forum with which to do it, rather than to litigate it?
>
> And there are two parts of to that question. Is it appropriate to revive it before going to the contracting officers, or only after a certified claim is presented to the contracting officer. Mr. Smith?
>
> MR. SMITH: That.
>
> THE COURT: The second?

> MR. SMITH: Yeah.
>
> THE COURT: When you say "that," you're talking about the second alternative?
>
> MR. SMITH: Yes, to me, that's the most fruitful avenue for speedy resolution.
>
> THE COURT: That's not the speediest resolution?
>
> MR. SMITH: Speediest would be to have PCL certify a legitimate delay claim, and then we'll sit down and chat.

*Id.*, pp. 13036:9-13037:6.

28. After the trial of PCL's Breach Claim, this Court issued two written decisions. *PCL I*; *PCL II*.

29. In its September 20, 2000 decision in *PCL Construction Services, Inc. v. United States*, 47 Fed. Cl. 745 (2000) ("*PCL I*"), the Court held "that PCL has failed to demonstrate a breach of contract" and found "that the separable, uncompleted portion of the contract was subject to a proper termination for default." *Id.* at 812.

30. In its August 28, 2002, decision in *PCL Construction Services, Inc. v. United States*, 53 Fed. Cl. 479 (2002) ("*PCL II*"), the Court held than "under the rule against apportionment, the government's delay of the project results in the annulment of the liquidated damages provisions" and, "[i]n the alternative under the clear apportionment rule, the court likewise denies the government's assessment of liquidated damages because no clear apportionment of the delay that occurred on the project has been established in the record." *Id.* at 493.

31. In numerous instances in *PCL I*, the Court specifically referenced PCL's reservations of rights for delays, disruptions, and/or impacts. For example, in regard to

Modification 67, the Court found, "Bilateral modification 67 resolved CRX 94, with PCL reserving the right to pursue a delay claim later." *PCL I* at 763-64. The Court made similar references in no less than twelve other instances when referring to the execution of Contract Modifications. *Id.* at 759, 761, 764, 766-67, 771, 773, and 787 n. 43.

32. Additionally, the Court stated, "PCL has never submitted a contractual claim seeking payment for unresolved CRX's." *Id.* at 777.

33. Finally, regarding the Government's expert witness' testimony, the Court stated:

> Although Mr. Caruso's testimony was considered sufficient to rebut the plaintiff's allegations of hindrance to the extent of breach of contract, [FN48] the specifics as to the amount of delay were not embraced in total by the court based on the testimony and evidence offered. Nor does the court need to reach such a conclusion for the purposes of this opinion . . . .
>
> FN48 In other words, the testimony at trial of fact witnesses buttressed the analysis and conclusions of the defendant's expert report; however, the absolute conclusions are not adopted by the court and are reserved for any claim that PCL may elect to bring for a delay claim . . . .

*Id.* at 802.

34. In *PCL II*, the Court specifically referenced PCL's reservation of rights for delays, disruptions, and/or impacts:

> "PCL's proposal which led to Modification 54 did not include a time impact evaluation, although PCL reserved the right to submit such an evaluation at a later time."

*PCL II* at 488.

35. Furthermore, the Court stated that "neither party has submitted evidence which relates, with sufficient credibility, how the changes and delays affect other delay present in the case." *Id.* at 489.

36. Finally, the Court stated:

> Although the court has found that the government did not delay the construction of the project to the extent plaintiff claims, and, therefore, did not breach the contract, based on the evidence adduced at trial, it is clear that the government did contribute to the delay.

*Id.*

> In other words, the testimony at trial of fact witnesses buttressed the analysis and conclusions of the defendant's expert report; however, the absolute conclusions are not adopted by the court and are reserved for any claim that PCL may elect to bring for a delay claim.

*Id.* at 491, n. 48.

37. PCL appealed the Court's decisions in *PCL I* and *II* to the United States Court of Appeals for the Federal Circuit ("Federal Circuit"). *PCL Construction Services, Inc. v. United States*, 96 Fed. Appx. 672, 2004 WL 842984 (Fed. Cir. 2004). In an unpublished decision, the Federal Circuit affirmed the Court's decisions, but did not address PCL's reservations of rights for delays, disruptions, and/or impacts. *Id.* at *1, 6.

38. On April 28, 2005, PCL submitted a certified claim to the USBR's contracting officer, pursuant to 41 U.S.C. 8 605(c), in the amount of $2,399,483, seeking additional direct costs under remedy granting provisions of the Contract for changes in the scope of the Contract ("CRX Claim"). CRX Claim, Appendix 10.

39. Subsequently, on September 12, 2005, PCL submitted a certified claim to the contracting officer in the amount of $19,669,050, requesting costs incurred by PCL when it was delayed and disrupted by the Government in performing the Contract ("D&D Claim"). D&D

Claim, Appendix 11. The D&D claim is specifically based on the changes, suspension and work and differing site conditions clauses of the Contract. *See id.*

40. Without addressing the merits of either the CRX or the D&D claim, both were denied by the contracting officer in separate final decisions on September 30, 2005 and January 13, 2006, respectively. Appendices 12 and 13. The contracting officer denied the claims stating that both were barred by the doctrine of *res judicata*. *See id.*

DATED this 15th day of December, 2006.

SHERMAN & HOWARD LLC

By: s/ Durward E. Timmons
Durward E. Timmons

90 S. Cascade Avenue
Suite 1500
Colorado Springs, CO 80903-4015
Phone Number: (719) 475-2440
Facsimile: (719) 635-4576

Attorneys for Plaintiff PCL Construction Services, Inc.

OF COUNSEL:

Michael J. Cook
633 17th Street, Suite 3000
Denver, CO 80202
Phone Number: (303) 297-2900
Facsimile: (303) 298-0940

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of December, 2006, a true and correct copy of the foregoing was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Service is complete upon filing and parties may access this filing through the Court's system.

Peter D. Kiesler, Assistant Attorney General
David M. Cohen, Director
Deborah A. Bynum, Assistant Director
Brian S. Smith, Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
Attention: Classification Unit – 8th Floor
1100 L Street N.W.
Washington, D.C. 20530

s/ Durward E. Timmons